United States Court of Appeals,

Fifth Circuit.

No. 92-7659

Summary Calendar.

John PANIAGUA, Plaintiff-Appellant, Cross-Appellee,

v.

CITY OF GALVESTON, TEXAS, Defendant-Appellee, Cross-Appellant.

July 23, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

John Paniagua, an employee of the City of Galveston, appeals from a magistrate judge's determination that the time he spent on standby for the City is not compensable under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. The City cross-appeals from the magistrate's decision that Paniagua's standby time is compensable under the terms of the employment contract between Paniagua and the City. Finding no error, we affirm the magistrate judge's decision in all respects.

I. BACKGROUND

John Paniagua was employed by the City of Galveston as Plant Mechanic Supervisor, a permanent full-time position, from January 19, 1990, until September 21, 1991. During most of this eighty-eight week period, Paniagua's supervisor required him to be on continuous standby. That is, he was required to carry an electronic paging device and to be available to answer emergency service requests. Except for the two weeks in which Paniagua was on vacation, he was on standby twenty-four hours per day, seven days per week.

The City of Galveston Personnel Rules and Regulations that were in effect during this time period provided that "employees may be required to work overtime ... and/or be on standby." Rule 5.2. The Rules and Regulations further provided, however, that

> City employees who are required to remain on standby call for seven consecutive days will receive five and one-half (5 1/2) hours overtime pay at one and one-half (1 1/2) times his/her

regular hourly rate. Actual hours worked will be paid in addition to the five and one-half (51/2) hours standby pay.

Rule 3.9. Thus, according to the employee handbook, although employees like Paniagua could be required to be on standby, the City would compensate those employees with five and one-half hours of overtime for each week they were required to be on standby.

On April 24, 1991, Paniagua wrote to Kathi Flowers, the Director of the City's Municipal Utilities Department, to ask why he was not receiving pay for being on standby. The letter read as follows:

> To: Kathi L. Flowers
>
> Looking at the City of Galveston Personnel Rules & Regulations section 3.9 Standby Pay. I wo uld like to talk to you about this matter on why I'm not receiving standby pay. Thank you for taking time out for this matter.
>
> John Paniagua

Flowers responded that, when Paniagua interviewed for the position of Plant Maintenance Supervisor, he was informed that his "responsibilities would include answering after hours emergency calls." Flowers also reminded Paniagua that he indicated he was "willing to accept this responsibility" and suggested that, if he was now unwilling to take the responsibility without standby pay, he should relinquish his position of Plant Maintenance Supervisor. Finally, Flowers advised Paniagua that he could file a grievance with the City Personnel Director if he was dissatisfied with her decision to deny his request for standby pay.

Paniagua took Flowers' advice and filed a grievance with the Personnel Director, who referred the dispute to a grievance committee. After hearing arguments from both sides, the grievance committee unanimously recommended to the City Manager that Paniagua receive the standby pay he was requesting. The grievance committee specifically found that Paniagua's immediate supervisor, Tim Harrison, had placed Paniagua "on-call" and that, if Paniagua had not been available to answer calls, he would have been disciplined. The Galveston City Manager, as he was entitled to do, rejected the grievance committee's recommendation and denied Paniagua's request for standby pay.

Paniagua then proceeded to state court, where he filed a petition asserting two causes of

action. Paniagua first alleged that the City of Galveston had breached the terms of its employment contract with him—terms that he alleged were embodied in the City of Galveston Personnel Rules and Regulations. Paniagua also asserted a cause of action under the Fair Labor Standards Act (the FLSA claim). Paniagua specifically asserted that the City of Galveston had violated 29 U.S.C. § 207(a), which provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The City of Galveston removed the case to federal court, and the parties agreed to try the case to a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). After hearing testimony on the issue, the magistrate determined that the City of Galveston had breached the terms of its employment contract with Paniagua. The magistrate specifically concluded that: (a) the City of Galveston Personnel Rules and Regulations "constitute terms and conditions of Plaintiff's employment contract with the City and are binding upon the City"; and (b) because Paniagua "was required to be available to answer emergency service requests before or after working hours he is, under the clear meaning of the relevant provisions of the City's Rules and Regulations, entitled to stand-by pay for the entire period of time he was employed as Plant Mechanic Supervisor ... less two weeks time he was on vacation." However, the magistrate rejected Paniagua's FLSA claim. The magistrate concluded that, even though the City had agreed to compensate Paniagua for the inconvenience of being on continuous standby, the standby time did not constitute compensable "working time" under 29 U.S.C. § 207(a).

Paniagua now appeals from the portion of the magistrate's order rejecting his FLSA claim, and the City cross-appeals from the magistrate's resolution of Paniagua's breach of contract claim.

## II. ANALYSIS

### A. The Breach of Contract Claim

We address the City's cross-appeal first. The City argues that the magistrate erroneously determined that the City of Galveston Personnel Rules and Regulations constitute terms of Paniagua's employment. The City also contends that the magistrate erred in finding that Paniagua was on

standby, as defined by Rule 3.9(A), for all but two of his eighty-eight weeks as Plant Mechanic Supervisor.  Finally, the City argues that the magistrate incorrectly concluded that no supervisor or other City official had the right to modify the Rules or Regulations as they applied to Paniagua.

1. *What were the terms of the employment contract between Paniagua and the City of Galveston?*

Citing Texas cases dealing with the employment-at-will doctrine, the City argues that the standby pay provision in its employee handbook could not have become a term of its contract with Paniagua.  The City specifically argues that, in order for the standby pay provision to have become a term of Paniagua's employment contract, there would have to be evidence of "an express agreement to modify [their] employment at-will [relationship]."  We disagree and hold that the magistrate did not clearly err in finding that the standby pay provision became part of Paniagua's employment contract.

Initially, we note that, even assuming that Paniagua had only an at-will employment contract, he nonetheless had a *contract* with the City of Galveston.  Under Texas law, an at-will contract is, "[u]ntil terminated, ... valid and subsisting." *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 698 (Tex.1989) (holding that the terminable-at-will status of a contract is no defense to an action for tortious interference with its performance).  That an employment contract is terminable at-will means only that the contract "may be terminated at will and without cause." *Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 723 (Tex.1990).  It does not mean that an employer can promise to pay an employee a certain wage and then unilaterally decide to pay the employee less for work she has already done. *See Pickell v. Brooks,* 846 S.W.2d 421, 427 (Tex.App.—Austin 1992, writ filed) (an at-will employee has vested property rights to the salary and benefits for the time she has already worked).

In any event, the question presented by the City's appeal is not whether the employee handbook modified the presumptively at-will nature of Paniagua's employment contract.[1]  Rather, the

---

[1]The City has cited several cases dealing with the extent to which employee handbooks displace or modify the employment-at-will rule. *See, e.g., Federal Express Corporation v. Marcie Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993) (holding that an employee handbook, which specifically disclaimed any intent to create contractual rights, did not place any restrictions on the employment-at-will relationship); *Hicks v. Baylor Univ. Medical Center,* 789 S.W.2d 299,

question is whether the provision on standby pay constituted a term of the contract. This latter question involves a straightforward application of contract principles. Specifically, it requires a determination regarding whether the parties intended that Paniagua would be compensated for his standby time as provided in the Rules and Regulations.

The magistrate found that the standby provision appearing in the City's Rules and Regulations constituted a term and condition of Paniagua's employment contract with the City. This finding is not clearly erroneous.[2] There is evidence in the record that (a) by placing the standby pay provision in the Rules and Regulations, the City intended to compensate employees who were required to be "on call" for their inconvenience,[3] and (b) Paniagua received a copy of the Rules and Regulations when

302-303 (Tex.App.—Dallas 1990, writ denied) (concluding that employee handbook did not modify employment-at-will relationship where the employee had signed an acknowledgment card specifically stating (a) that the handbook did not constitute a contract of employment, and (b) that the information in the handbook was subject to change and could be modified, superseded, or even eliminated at any time). These wrongful discharge cases are not, our view, dispositive or controlling. They speak only to the question of whether a statement in an employee handbook is sufficient to overcome the presumption that an employment contract is terminable-at-will. They do not speak to the more general question of whether an employee handbook can obligate the employer to compensate an employee according to a certain formula.

[2]Under Texas law, questions about the terms of a contract are routinely treated as factual in nature. *See, e.g., Regal Constr. Co. v. Hansel,* 596 S.W.2d 150, 155 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (holding that trial court erred in granting a judgment notwithstanding the verdict on the question of the parties' agreed-upon contract price); *Engineering Technology Analysts, Inc. v. Shetti,* 517 S.W.2d 698, 700 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ) (concluding that material issues of fact concerning the terms of compensation under an employment contract precluded summary judgment); *Culkin v. Neiman-Marcus Co.,* 354 S.W.2d 397, 400 (Tex.Civ.App.—Fort Worth 1962, no writ) (concluding that there was a jury question as to the duration of the plaintiff's hiring). Indeed, Texas appears to adhere to the general rule that

> Whether certain or undisputed facts establish a contract is a question of law for the court, but the existence of such facts *and the terms of a contract in fact* are, where the evidence is conflicting or admits of more than one inference, questions for the jury or the court as trier of the facts.

*First National Bank v. Joseph T. Ryerson & Son, Inc.,* 487 S.W.2d 377, 381 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.) (emphasis added) (quoting 17A C.J.S. *Contracts* § 611); *see also Simpson v. Williams,* 574 S.W.2d 874, 876 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.) ("Although appellees' testimony concerning their intent as to the terms of the option contract was somewhat confusing and inconsistent, this merely created a question of fact for the jury.").

[3]Benjamin Davis, the City Personnel Director who originally drafted the Rules and Regulations, stated that the purpose of Rule 3.9 was to compensate the employee for the

he first began working for the City.[4] More importantly, the language of the Rules and Regulations themselves indicate that they are binding. The City can, under the Rules and Regulations, require an employee to be on standby. If the City does require the employee to be on standby, however, the Rules and Regulations provide that the employee "*will* receive five and one-half (51/2) hours overtime pay at one and one-half (11/2) times his/her regular hourly rate." Finally, the absence of any disclaimer in the Rules and Regulations—i.e., to the effect that they do not create a contract or affect legal relations—reinforces the magistrate's determination that the standby provision became part of the terms of Paniagua's employment contract.

In arguing that the standby pay provision could not have become a term of Paniagua's employment contract, the City places heavy emphasis on the fact that the Rules and Regulations could have been amended by the Galveston City Council. There are two problems with this argument. First, the standby pay provision is in the nature of a unilateral contract. That is, once Paniagua performed—by being on standby for seven consecutive days—he was, pursuant to the unambiguous terms of the Rules and Regulations, entitled to receive five and one-half hours of overtime pay. Second, there is no allegation that the Galveston City Council has in fact modified or amended the standby pay provision. Thus, that the Galveston City Council could have amended the Rules and Regulations does not prevent the standby pay provision from becoming a term of Paniagua's employment contract.

Accordingly, we reject the City's argument that the magistrate erred in finding that the standby pay provision was a term of Paniagua's employment contract. The finding is plausible in light of the record as a whole and, therefore, is not clearly erroneous. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Of course, we express no opinion regarding whether other provisions in the Rules and Regulations became terms of Paniagua's contract, or whether the Rules or Regulations modified or placed limitations on the at-will nature of

___

inconvenience of being on-call.

[4]Davis testified that, although he did not know for certain whether Paniagua ever received a copy of the City's Rules and Regulations, it was standard practice to give new employees a copy of them.

the relationship between Paniagua and the City.

2. *Does the City Manager have the power to modify the City of Galveston Personnel Rules and Regulations?*

The City also argues that the magistrate erred in finding "that no supervisor or other City official ... had the right to modify the Rules and Regulations as applied to [Paniagua] in his position as Plant Mechanic Supervisor." The City concedes that, according to the Rules and Regulations, the power to amend the rules is vested in the Galveston City Council. Nonetheless, the City argues that, because the City Manager has the "general authority and responsibility for the conduct and administration of personnel affairs," he also has the power to modify or amend the Rules and Regulations. Again, we disagree.

The provision relied upon by the City does not give the City Manager the power to amend or modify personnel rules. Rather, the provision reads as follows:

> *With the exception of matters and appointments reserved to the City Council* by law or City Charter, general authority and responsibility for the conduct and administration of personnel affairs is vested in the City Manager. Accordingly, the City Manager:
>
> 1. Is responsible for the administration of the City's personnel program.
>
> 2. Makes and approves all appointments to positions under his authority.
>
> 3. May appoint and delegate authority for the administration of the City's personnel programs. In most instances, such delegation has been made to the Personnel Director.

Rule 1.4(B). The City thus ignores the first part of the rule, which specifically excepts from the City Manager's authority "matters ... reserved to the City Council by law or City Charter." Moreover, the City ignores that the authority to amend or modify the Rules and Regulations is not included among the specifically listed powers of the City Manager.[5]

3. *Was Paniagua on standby as the term is defined in the in the City of Galveston Personnel Rules and Regulations?*

Finally, the City argues that the magistrate erred in finding that Paniagua was on "standby"

---

[5]The City suggests that the authority to modify or amend the rules is implicitly included in the City Manager's authority to *administer* the personnel program. In our view, however, the authority to administer a program does not include the power to modify or amend the program—especially when the terms of the program explicitly delegate the power to do the latter to another entity.

as the term is defined in the Rules and Regulations. Specifically, the City contends:

> To determine if an employee is on stand-by pursuant to [Rule] 3.9 of the Rules and Regulations, one must view the complete picture presented by the personnel relations of the City of Galveston. Many employees of the City carry paging devices and are subject to receiving after-hours telephone calls..... Those who carry beepers fifty-two (52) weeks per year do not receive stand-by pay.

The City makes a related argument that the Plant Mechanic Supervisor is exempt from receiving standby pay under Rule 3.9. As discussed below, both of these arguments are without merit.

Under the plain terms of the Rules and Regulations, an employee is on standby when he "is called upon by his/her supervisor to be available to answer emergency service requests before or after regular working hours." Rule 3.9(A). In this case, the magistrate specifically found that Paniagua's supervisor required him "to be available to answer emergency service requests before or after regular working hours every working day he held that position." This finding, which is not clearly erroneous, provides ample support for the magistrate's conclusion that Paniagua was on standby within the meaning of Rule 3.9. In short, the record supports the magistrate's determination that Paniagua did more than just carry a beeper: he was also required to respond to calls.

The City's argument that the position of Plant Mechanic Supervisor is excluded from the scope of Rule 3.9 is similarly without merit. The Rules and Regulations provide that certain employees are exempt from overtime pay—namely, (1) council appointees and (2) professional, administrative, executive, and other employees as exempted by the Fair Labor Standards Act. However, Paniagua's position is not included within either of these groups. Indeed, the City does not even allege that Paniagua was appointed by the Galveston City Council. And, in response to Paniagua's requests for admissions, the City admitted that Paniagua was *not* exempt from overtime under the Fair Labor Standards Act.[6]

_____

[6]We necessarily reject the City's remaining arguments, all of which depend on a determination either that the standby pay provision was not a term of Paniagua's employment contract or that the City did not breach the provision. In particular, we reject the City's arguments that (1) the magistrate erred in concluding that Paniagua was entitled, under the clear meaning of the relevant provisions of the City's Rules and Regulations, to standby pay for the period January 19, 1990, to September 21, 1991, less two weeks of vacation; (2) the magistrate erred in concluding that the City breached its employment contract with Paniagua; (3) the magistrate erred in concluding that Paniagua was entitled to recover $7,251.79, the amount of accrued and unpaid standby pay.

**B. The FLSA Claim**

Paniagua appeals the magistrate's determination that the time for which he was on standby is not compensable under the FLSA. In particular, he contends that the City's agreement to pay him five and one-half hours of overtime for each week he was on standby makes his standby time compensable under the FLSA. He also maintains that the magistrate erred in finding that he was able to use his standby time effectively for his own purposes. For the following reasons, we reject each of these arguments and affirm the magistrate's determination that Paniagua's standby time is not compensable under the FLSA.

29 U.S.C. § 207(a)(1) requires an employer to compensate an employee for "a workweek longer than forty hours ... at a rate not less than one and one-half times the regular rate." Whether on-call or waiting time is working time that is compensable under § 207(a)(1) is a question of fact dependent on all the circumstances of the case. *Skidmore v. Swift & Co.,* 323 U.S. 134, 136-37, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself." *Id.* at 137, 65 S.Ct. at 163. The critical issue, we have stated, is "whether the employee can use the [on-call] time effectively for his ... own purposes." *Halferty v. Pulse Drug Co.,* 864 F.2d 1185, 1189 (5th Cir.1989).

The magistrate did not clearly err in determining that the time Paniagua spent on standby is not compensable under the FLSA. The record plainly supports the finding that Paniagua was able to effectively use his standby time for his own purposes. That he was interrupted several times a week does not change the fact that he was able to attend movies, go to dinner, and otherwise travel within a thirty-mile radius. Indeed, under our decisions in *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369 (5th Cir.1987), and *Bright v. Houston Northwest Medical Center Survivor, Inc.,* 934 F.2d 671 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992), the magistrate would have probably been clearly erroneous had he determined that Paniagua was engaged to wait rather than waiting to be engaged.

The City's agreement to pay Paniagua five and one-half hours overtime for each week spent

on standby does not alter our conclusion. As noted earlier, the City Personnel Director who drafted the standby pay provision testified that it was designed to compensate employees for the *inconvenience* of being on standby; the use of five and one-half hours overtime per week is merely the formula the City has chosen to quantify the inconvenience. In short, the City's agreement to compensate employees for inconvenience does not, in our view, automatically render the time spent on standby "working time" under the FLSA.[7]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the magistrate judge in its entirety.

---

[7]Because we hold that the magistrate did not clearly err in finding that Paniagua was waiting to be engaged rather than engaged to wait, we necessarily reject his argument that the magistrate erred in holding that Paniagua was not entitled to liquidated damages or attorney's fees under the FLSA. Further, we have no need to address Paniagua's argument that the magistrate erred in failing to conclude that he was a non-exempt employee under the FLSA.