**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 30, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-20614

HILDA S. JOURDAN,

Plaintiff-Counter Defendant-Appellant,

versus

SCHENKER INTERNATIONAL INC.,

Defendant-Counter Claimant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
(H-99-CV-4081)

Before GARWOOD and HIGGINBOTHAM, Circuit Judges, and FELDMAN, District Judge.[*]

GARWOOD, Circuit Judge:[**]

Plaintiff-appellant Hilda S. Jourdan brought suit against her former employer, defendant-appellee Schenker International, Inc.

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

[**]Pursuant to 5TH CIR. R.47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(Schenker), for breach of contract arising from Schenker's refusal to pay a sales commission under the terms of a sales-incentive plan. The district court granted summary judgment for Schenker, finding that the company's alleged promise to pay a commission under the incentive plan was illusory, and that there was, therefore, no contract as a matter of law. We conclude that there is at least a genuine issue of material fact with respect to the meaning of the sales-incentive plan in this respect, specifically whether Jourdan had an accrued right under the plan to commissions on sales that had occurred prior to the termination of her employment with Schenker. We therefore vacate the judgment of the district court and remand for further proceedings not inconsistent herewith.

## Background

Schenker, a freight-forwarding company that provides freight-delivery services to companies worldwide, employed Jourdan as a sales representative in its Houston office from 1989, until she was discharged in November 1999. Although the parties dispute Jourdan's right to the sales commission at issue, they are in agreement on a number of other central facts. First, both agree that Jourdan was an at-will employee eligible to receive a sales commission on those business accounts that Jourdan managed and that showed a certain growth in gross profits.[1] Second, the parties

---

[1] Schenker introduced its sales-incentive program on May 29, 1998, and made the program retroactive to January 1, 1998.

2

agree that Jourdan was discharged from her position with Schenker on November 9, 1999, for what Schenker characterized as "lack of performance" related to her failure to meet certain minimum sales goals for 1999.

In 1996, Jourdan was assigned to assist in the preparation of Schenker's bid for the shipping business of Bariven S.A., the shipping agent for Venezuela's national oil company. In April of 1998, Bariven accepted Schenker's bid, and the two companies entered into a five-year contract under which Schenker agreed to provide shipping services for Bariven at ceratin agreed rates. Jourdan was thereafter assigned to a team of Schenker employees responsible for managing the account and for fulfilling Bariven's orders. Jourdan worked exclusively on the Bariven account until August 21, 1998, when she was told by her supervisor that she was being taken off the account and that she should resume making sales calls to obtain additional business from new and current customers.[2]

---

Under the program, Jourdan was entitled to receive a sales commission on the total growth of her existing and newly acquired accounts if that growth, measured in gross profits, exceeded three times her salary and fringe benefits. For any amount of gross profit growth in excess of three times her salary and benefits, Jourdan was entitled to a commission of 7%. For growth in gross profits in excess of four times her salary and fringe benefits, Jourdan was entitled to a 10% sales commission.

[2] Schenker points to this date, August 21, 1998, as the point at which Jourdan was removed from the Bariven account. Jourdan asserts, however, that although management then removed her from the diurnal operations of the account, she nevertheless retained responsibility for the account for purposes of earning a

Until mid-1998, Schenker was losing a substantial amount of money on the Bariven account. After August of 1998, however, Schenker and Bariven renegotiated their contract to establish new rates for Schenker's services. Following those renegotiations, the Bariven account began to show a profit, and by July 1999, Schenker had earned a gross profit from the account in the amount of $1,018,510. The present dispute concerns Jourdan's claim of a

commission.
        The district court, in addressing this dispute, held that there was a genuine issue of material fact as to (1) whether Jourdan was actually ever fully removed from the Bariven account, and (2) whether, and under what circumstances, Schenker had the right to remove a sales representative from an assigned account. Schenker challenges the latter holding on appeal, arguing that the district court erred in concluding that there was a genuine issue of fact concerning Schenker's right to take an account away from a sales representative. Schenker, however, does not clearly assign as error the district court's former, and logically prior holding, namely that there is a genuine issue of fact as to whether Jourdan was ever removed from the Bariven account. Instead, Schenker addresses this holding only in passing, with only minimal citation to the record, and with no citation to any authority. *See* FED. R. APP. P. 28(a)(9)(A) (noting that an appellee's brief must contain the appellee's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the [appellee] relies")*; see also Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 911 (5th Cir. 1994) (declining to reach the merits of an appellant's argument where the appellant's brief failed to provide citations to relevant authorities and parts of the record), *modified on denial of reh'g Randall v. Chevron, U.S.A., Inc.*, 22 F.3d 568 (5th Cir. 1994); *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) (same). For this reason, we decline to address if, or when, Jourdan was removed from the Bariven account. And because that question is the logically prior one, we also decline Schenker's invitation to hold that the district court erred in concluding that there was a genuine issue of fact concerning whether Schenker had discretion to remove Jourdan from the account, and we instead leave Schenker to pursue these avenues of argument on remand.

4

right to a commission on that profit.

Jourdan maintains that the sales-incentive plan constitutes a binding contract, under which she should have received credit for the profit growth of the Bariven account in 1999. Schenker, however, argues that any promise to pay a commission on the Bariven account was conditioned on Jourdan's continued employment with Schenker *at the time that sales commissions were calculated and paid*,[3] thereby rendering any promise to pay a sales commission illusory and unenforceable. The district court agreed with Schenker's interpretation of the plan in this respect, and on that basis granted summary judgment for Schenker on Jourdan's breach of contract claim. Jourdan now appeals.

## Discussion

A. *Standard of Review*

We review a district court's grant of summary judgment *de novo*, *Young v. Equifax Credit Info. Servs. Inc.*, 294 F.3d 631, 635 (5th Cir. 2002), applying the same standards as the district court, and drawing all reasonable inferences from the evidence in favor of the non-moving party. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Banks*

---

[3] Schenker also disputes whether Jourdan was ever assigned to the Bariven account for purposes of earning a commission under the sales-incentive plan. The district court, however, did not resolve this issue, nor is this matter directly before us. Instead, we assume for present purposes that Jourdan was assigned to the Bariven account within the meaning of the sales-incentive plan. Schenker remains free to pursue this issue on remand.

5

*v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). "Summary judgment is proper if, after adequate opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Young*, 294 F.3d at 635. The movant bears the initial burden, on a motion for summary judgment, of specifically pointing out wherein there is no genuine issue of material fact. *See Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). If the movant fulfills this burden, the non-movant, to avoid summary judgment, must come forward with summary judgment evidence sufficient to warrant a finding in its favor on all issues on which it would bear the burden of proof at trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1998).

B.  *Illusory Contracts*

An illusory promise, at common law, "is neither enforceable against the one making it, nor . . . operative as a consideration for a return promise." 2 JOSEPH M. PERILLO & HELEN H. BENDER, CORBIN ON CONTRACTS § 5.28 (rev. ed. 1995). Thus, it has long been held that where the condition of a promise lies solely within the promisor's power, the promisor, not being bound to a course of conduct, cannot be said to have entered into a contract. *See* RESTATEMENT (SECOND) OF

6

CONTRACTS § 77 cmt. a (1981) ("Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise."). This tenet of contract law applies with equal force in the context of employment relations governed by Texas law.[4] Thus, the Texas Supreme Court has held that "[c]onsideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependant on a period of continued employment." *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 645 n.5 (Tex. 1994). That such a promise would be illusory follows from the principle that where an employee is employed at-will, any additional period of employment rests exclusively within the control of the employer. *Id*. at 644-45 ("Any promise made by either [the] employer or employee that depends on an additional period of employment is illusory" and unenforceable).

Not every promise made in the context of at-will employment, however, is unenforceable. "That an employment contract is terminable at-will . . . . does not mean that an employer can promise to pay an employee a certain wage and then unilaterally decide to pay the employee less for work she has already done."

---

[4] Both parties agree that Texas law governs this diversity suit, and the district court accordingly looked to the law of at-will employment in Texas to determine that Schenker's promise to pay a sales commission was an illusory and unenforceable one. *See, e.g.*, *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995) ("Federal courts apply state substantive law 'when adjudicating diversity-jurisdiction claims . . . .'").

7

*Paniagua v. City of Galveston*, 995 F.2d 1310, 1313 (5th Cir. 1993) (citing *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723 (Tex. 1990), and *Pickell v. Brooks*, 846 S.W.2d 421 (Tex.App.—Austin 1992, pet. denied)). Thus, if Jourdan had earned her commission before she left Schenker in November 1999, Schenker cannot rely only on Jourdan's at-will status to deny payment of an earned commission.

C. *The District Court's Opinion*

Relying on *Light*, the district court concluded that Jourdan's employment was at-will and that Schenker's promise to pay a sales commission was therefore illusory. We find no error in the district court's conclusion that Jourdan's employment was at-will and that her continued employment was a condition entirely within Schenker's control. *See, e.g.*, *Texas Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 608 (Tex. 2002) ("[A]bsent a contract, the relationship between an employer and an employee is 'at will,' meaning that, except for very limited circumstances . . . either party may terminate the employment relationship for any reason or no reason at all."). The district court, however, failed to determine expressly at what point Jourdan had an accrued right to a sales commission. That determination, however, is critical to resolving whether Jourdan is entitled to a commission on at least a portion of the gross profits earned in 1999 from the Bariven account.

8

The sales-incentive plan provides that commissions are to be paid based on the total growth in gross profit of those accounts assigned to an individual employee. With respect to the payment of commissions, the plan merely provides: "Sales incentive will be paid quarterly. Payments will be based on all figures from our accounting system." The plan, however, is silent as to when a right to an incentive payment accrues.

An examination of the language of the program indicates three theoretically possible points at which a right to a sales commission might be said to have accrued. First, the right to a commission may accrue under the plan at the point at which an account begins to show a gross profit. Second, the right to a commission may accrue only at the point a commission is calculated according to the figures of Schenker's accounting system. And third, the right might be said to accrue only at the point that each quarterly payment on the commission is to be made.

If the right to a sales commission under the incentive plan accrued only at the time that the commission was either calculated or actually paid, then the payment of a commission would necessarily be conditioned on continued employment to the point of calculation or payment, a condition over which Schenker exercised near-complete control. Any promise to pay that commission would, therefore, be illusory, and Schenker would be entitled to summary judgment on Jourdan's contract claim. If, however, the right to a sales commission accrued under the incentive plan at the time that

9

an account began to show a profit, with only payment delayed until a future date, then that payment, more akin to a salary, would not be conditioned on continued employment, and Schenker's promise to pay would not be illusory. The issue before us, therefore, becomes the existence *vel non* of an issue of material fact regarding the point at which an employee's right to a sales commission accrued under Schenker's sales-incentive plan.

D.  *The Sales-Incentive Plan*

Having thus narrowed our inquiry, we conclude that the language of the sales-incentive plan at the least raises the reasonable possibility that Jourdan's right to a sales commission accrued, not at the time that the commission was to be calculated, but at the point at which the Bariven account showed a gross profit.[5]

Schenker, however, maintains that it did not promise to pay Jourdan a commission at the time that she earned the commission,

---

[5]  Jourdan also argues in her brief that she is entitled to a commission on the profit growth of the Bariven account past November 1999. This argument, however, clearly has no merit. Jourdan was an at-will employee, and any contractual rights terminated with the conclusion of her employment. Indeed, both at oral argument and in her deposition testimony, Jourdan conceded that only those sales persons who remained employed with Schenker continued to receive sales commissions over the life of an account. Thus, although we hold that there is a possibility that Jourdan has a contractual right to a commission on the Bariven account, that right extends only up to the point of Jourdan's termination, and not to any growth in gross profits after November 1999.

10

but rather promised to pay the commission *if* Jourdan continued to be employed at the end of the calender year, and at each quarter thereafter on which a payment was due.  Schenker, however, cites no evidence in the record to support the proposition that a right to a sales commission only accrues at the point at which the commission is calculated.  Instead, it relies for support for this position solely upon the language of the incentive plan quoted above and upon the fact that commissions were calculated at year end.

As discussed above, however, the language of the payment clause of the incentive plan is at the least ambiguous and sheds no light on the question of when an employee's right to a commission accrues.  The proper construction of an ambiguous contract is a question of fact.  *Matter of Fender*, 12 F.3d 480, 485 (5th Cir. 1994).  In the absence of any additional evidence that its employees had generally understood that their rights to a commission only accrued if they remained employed with Schenker at the end of a given calender year,[6] we conclude that the contract

---

[6]  Schenker maintains that its employees knew that the commissions for growth realized in one year would not be paid until the next calender year. Thus Schenker states that "[i]n 1999, Jourdan received commissions paid for work she performed in 1998."  From this statement Schenker argues "[t]hus, Jourdan knew that, under the same Sales Program, commissions paid for work performed in 1999 would not be paid unless she was employed at the time commissions were paid in 2000."  This statement is a *non sequitur*, and does not constitute summary judgment evidence establishing the point of accrual.  It does not necessarily follow from the fact that an employee is paid on one date, or

does not unambiguously reflect Schenker's construction and that there is at the least a genuine factual dispute on this pivotal issue.[7]

## Conclusion

Because we find that there is at the least a genuine issue of material fact concerning the point at which Jourdan's right to a commission on the Bariven account accrued under the sales-incentive plan, we VACATE the district court's grant of summary judgment to Schenker and REMAND the case for further proceedings not

that the amount of a payment is calculated on a particular date, that the employee does not have an accrued right to that payment at an earlier date.

Moreover, there is some dispute as to when Schenker actually made commission payments. At oral argument, Jourdan maintained that commission payments were made quarterly in the year that they were earned, not in the following year. We note that this is, at best, a strained reading of the language of the plan. Given that the commission payments were to be computed annually, it is difficult to see how quarterly payments could have been made prior to the computation of the commission. However, because, aside from this dispute, we conclude that there is a fact issue concerning when the right to a commission accrued under the sales-incentive plan, we need not address the parties' factual dispute concerning the timing of commission payments, a dispute only clearly raised for the first time at oral argument.

[7] We also note that it is not clear that Schenker argued before the district court that its promise was illusory. In fact, Jourdan states that it was the district court that first raised this issue on its own motion. Schenker did argue, in its reply brief in support of its motion for summary judgment, that no employee could claim a commission if their employment was terminated before commissions were calculated and paid. It is not clear, however, that this argument was raised in support of the claim that its promise was illusory: Schenker did not cite any Texas cases concerning illusory contracts or at-will employment. Accordingly, Jourdan cannot be charged with a failure to produce rebuttal evidence concerning the point at which a right to a commission accrued under the contract.

12

inconsistent herewith.

VACATED and REMANDED.