IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 25, 2008

Charles R. Fulbruge III
Clerk

No. 06-20957

Hilda S. Jourdan

Plaintiff-Appellant

v.

Schenker International, Inc.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
(99-CV-4081)

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Hilda Jourdan[1] brought suit against her former employer, defendant-appellee Schenker International, Inc. ("Schenker"), for breach of contract arising from Schenker's refusal to pay a sales commission under the terms of a sales-incentive plan. A jury returned a verdict for Jourdan, finding that she had established (1) that she was the "commissioned salesperson designated to receive sales commissions" for the relevant account, (2) that she

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Since filing suit, Jourdan has married and changed her name to Cosman.

was not removed as "commission salesperson" from the account in August 1998, (3) that she "was entitled under the 1998 Sales Incentive Plan to be paid 1999 commissions" on the account, and (4) that $66,773.63 was the amount she "is owed by" Schenker "under the Schenker . . . 1998 Sales incentive Plan for" the relevant account. The district court granted Schenker's motion for judgment as a matter of law. We affirm.

Schenker, a freight-forwarding company that provides freight-delivery services to companies worldwide, employed Jourdan as a sales representative in its Houston office from 1989 until she was discharged in November 1999. Jourdan was an at-will employee eligible to receive a sales commission on those business accounts that she managed and that showed a certain growth in gross profits.[2] Jourdan was discharged from her position with Schenker on November 9, 1999, for what Schenker characterized as "lack of performance" related to her failure to meet certain minimum quarterly sales goals for 1999.

In 1996, Jourdan was assigned to assist in the preparation of Schenker's bid for the shipping business of PDVSA Services, the shipping agent for Venezuela's national oil company, Bariven S.A.[3] In April of 1998, PDVSA accepted Schenker's bid, and the two companies entered into a five-year contract under which Schenker agreed to provide shipping services for PDVSA at certain agreed rates. Jourdan was assigned to a team of Schenker employees

---

[2] Schenker introduced a sales-incentive plan (the "Sales Plan") on May 29, 1998, and made the plan retroactive to January 1, 1998. Under the plan, Jourdan was entitled to receive a sales commission on the total growth of her existing and newly acquired accounts if that growth, measured in gross profits, exceeded three times her salary and fringe benefits. For any amount of gross profit growth in excess of three times her salary and benefits, Jourdan was entitled to a seven percent commission. For growth in gross profits in excess of four times her salary and benefits, Jourdan was entitled to a ten percent commission.

[3] Schenker and the district court refer to the account at issue as the PDVSA Account. Jourdan refers to the account as the Bariven/PDVSA account. In an earlier opinion, this court referred to the account as the Bariven Account. On this appeal, we will adopt the mode of the district court and reference the PDVSA account.

responsible for managing the account and for fulfilling PDVSA's orders. Jourdan worked exclusively on the PDVSA account until August 21, 1998, when she was told by her supervisor that she was being taken off the account and that she should resume making sales calls to obtain additional business from new and current customers.

Until mid-1998, Schenker was losing a substantial amount of money on the PDVSA account. After August of 1998, however, Schenker and PDVSA renegotiated their contract to establish new rates for Schenker's services. Following those renegotiations, the PDVSA account began to show a profit, and by October 1999, Schenker had earned a gross profit from the account in the amount of $1,431,038. This suit concerns Jourdan's claim of a right to a commission on that profit.

On October 15, 1999, Jourdon filed her lawsuit against Schenker for its alleged failure to pay her commissions on the PDVSA account. On April 16, 2002, the district court granted summary judgment for Schenker, finding that the company's alleged promise to pay a commission under the Sales Plan was illusory, so there was no contract as a matter of law. This court, however, reversed the district court's grant of summary judgment on July 30, 2003. Jourdan v. Schenker Int'l Inc., 71 F. App'x 308 (5th Cir. 2003). In that earlier appeal, this court concluded that Schenker had not shown there was no genuine issue of material fact with respect to the meaning of the Sales Plan, and the court noted specifically that it had not shown there was no genuine issue of material fact regarding when, if ever, Jourdan's right to a commission on the PDVSA account accrued under the Sales Plan. The case was remanded for determination of this and other questions.

On March 14, 2006, a jury returned its above described verdict in Jourdan's favor.

On October 31, 2006, the district court granted Schenker's motion for judgment as a matter of law, under Federal Rule of Civil Procedure 50(b). Jourdan filed a timely appeal.

This court reviews "a district court's Rule 50 determination de novo, 'applying the same legal standard as the trial court.'" Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc., 276 F.3d 704, 707 (5th Cir. 2002) (quoting Flowers v. So. Reg'l Physicians Servs. Inc., 247 F.3d 229 (5th Cir. 2001)).

The standard for granting a motion for a judgment as a matter of law was addressed in Brown v. Kinney Shoe Corp., 237 F.3d 556, 564 (5th Cir. 2001), as follows:

> "The district court properly grants a Rule 50 motion for judgment as a matter of law only where the facts and inferences indicate a particular outcome so strenuously that reasonable minds could not disagree. In deciding a Rule 50 motion, the court should consider all the evidence in the light most favorable to the non-moving party. A jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as it did. Even if this court would reach a different conclusion as trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses."

The district court granted Schenker's Rule 50 motion on three separate grounds: (1) Jourdan presented no evidence that she told operations the account number for PDVSA, as required by the Sales Plan; (2) Jourdan did not present evidence sufficient to conclude that she had not been removed from the PDVSA account in August 2008; and (3) that Jourdan did not present evidence that her contractual right to a commission on the PDVSA account had accrued before she was fired by Schenker. As the plaintiff in this case, Jourdan bore the burden, under Texas law,[4] to prove each of these

---

[4] Both parties agree that Texas law governs this diversity suit, and the district court accordingly looked to the law of at-will employment in Texas to determine that Schenker's promise to pay a sales commission was an illusory and unenforceable one. See, e.g., Exxon

issues because each was necessary to establish that the Sales Plan created an enforceable agreement to pay her a commission on the PDVSA account and that Schenker breached that agreement. See Foster v. Centrex Capital Corp., 80 S.W.3d 140, 143-44 (Tex. App.—Austin 2002, pet. denied) (holding that a "plaintiff has the burden to prove (1) the existence of a valid contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach"). Therefore, if Jourdan failed to present sufficient evidence as to any of these issues, she has failed to carry her burden and the district court did not err by granting Schenker's motion for a judgment as a matter of law.

As we held on the prior appeal, Jourdan's right to a commission for her work on the PDVSA account depended on whether that right had accrued before she was terminated by Schenker in November 1999 or whether it required her to be employed until the end of that year or until the commission would have been due to be paid. Jourdan v. Schenker Int'l Inc., 71 F. App'x 308, 311 (5th Cir. 2003).

After a thorough review of the record, we have discovered no evidence presented at trial that would have allowed a reasonable jury to find that Jourdan's commission on the PDVSA account had accrued before she was fired in November 1999. In fact, the evidence presented at trial reflects that Sales Plan commissions were not determined until the end of the year in which they were earned, based on the entire year, and that employees generally had to be currently employed in order to receive the bonus.

For example, Jourdan testified during cross-examination that, although the Sales Plan stated that bonuses were paid quarterly, her bonus for 1998 was paid annually in the first quarter of 1999 and she did not know of anyone

Corp. v. Burglin, 42 F.3d 948, 950 (5th Cir. 1995) ("Federal courts apply state substantive law 'when adjudicating diversity-jurisdiction claims . . . .'").

5

who had received a commission on a quarterly basis. This was corroborated by defense witness Donna Hanson, Schenker's Vice-President of Finance and Human Resources. Ms. Hanson further testified that the Sales Plan commissions were not "vested benefits," that commissions were calculated at the end of the fiscal year because gross profits could fluctuate up and down from month to month, and that no salesperson had ever received a commission if they were not currently employed when commissions were paid.

All of these statements reflect that commissions under the Sales Plan did not accrue until at least the end of the year, and Jourdan produced no evidence indicating that commissions became payable any sooner. Jourdan's trial counsel acknowledged this deficiency on the record at trial and sought to call Craig Michael Cosman, Jourdan's now husband and former Schenker employee, as a rebuttal witness to testify that he was paid a sales commission after he had left the firm on December 31, 1999.[5] To support calling Craig Michael Cosman in rebuttal, Jourdan's trial council stated that "[t]here was no evidence whatsoever in my case as to when commissions were paid. They put that on in their case. Not that commissions were – that you had to be there."

On appeal, Jourdan argues that the language in the Sales Plan stating that "[s]ales incentives will be paid quarterly" provides sufficient evidence to support the jury verdict. This language, however, is ambiguous for a number of reasons including the fact that the Sales Plan measures commissions based on yearly growth in gross profits. At trial, Jourdan provided no evidence to

---

[5] The district court denied Jourdan's request to call Craig Michael Cosman as a rebuttal witness, but it did allow Jourdan to make an offer of proof. Jourdan does not challenge this action on appeal. Furthermore, Craig Michael Cosman's offer of proof only shows that a commission may have accrued at the end of the year if a salesperson was still employed, which Jourdan was not. It does not support that a commission accrued as soon as an account becomes profitable at any time during the year.

support her position on appeal that the contract provided for the quarterly payment of commissions in the year they were earned. As discussed above, she actually testified that she did not know of commissions ever being paid on a quarterly basis and that her 1998 bonus was not paid until the beginning of 1999. Absent any supporting evidence, her argument that the contract language alone was sufficient evidence to allow a reasonable jury to find that her bonus had already accrued by November 1999 falls short.

Jourdan also argues that it would have been possible to pay commissions on a quarterly basis because Schenker reported gross profit monthly and provided this information to salespeople so they could monitor their accounts and their progress toward their quarterly sales targets. While this is true, it is immaterial to the issue on when sales commissions actually accrued. Schenker Vice President Donna Hanson testified that commissions were determined at the end of the year because they were based on annual growth in gross profits, which could fluctuate throughout the year, so the actual amount of the commission could not be determined until the end of the year. Jourdan presented no evidence at trial to refute this point.

For these reasons, we hold that Jourdan failed to present any evidence from which a reasonable jury could have concluded that her commission accrued before she was terminated. Consequently, Jourdan did not carry her burden of proof. [6]

For the foregoing reasons, the district court did not err by granting Schenker's motion for a judgment as a matter of law.

AFFIRMED.

---

[6] Because our holding that Jourdan has failed to present evidence that her commission had accrued before she was terminated is sufficient to affirm the district court's ruling, we do not address the other bases for the district court's grant of Schenker's motion for a judgment as a matter of law.