Anabelle **FIGUEROA**, Appellant,

v.

Kirby **WEST**, Appellee.

No. 08–94–00177–CV.

Court of Appeals of Texas, El Paso.

June 29, 1995.

A.J. Pope, Midland, for appellant.

Robert E. Motsenbocker, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Inc., Odessa, for appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

Anabelle Figueroa appeals a directed verdict in favor of Appellee.[1] Appellant sued Appellee for wrongful termination based on the breach of alleged oral and written contacts, fraud, negligence, and deceptive trade practices. At the close of Appellant's case-in-chief, Appellee moved for a directed verdict, and the trial court granted it as to all causes of action. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Appellant began working for Appellee in 1981. In 1986, Appellee distributed to Appellant and other employees an employee handbook stating that they could be terminated at any time with or without cause. The hand book specifically provided that it did not constitute a contract, and it was in no way intended to alter the at-will status of the employees. It described itself as merely a guide to and brief explanation of company policies. Appellee acknowledged in writing that she had received the handbook and was responsible for knowledge of its contents. After a series of disciplinary problems, which resulted in numerous oral and written warnings of increasing severity, Appellant was discharged in 1988.

---

1. Although not designated as such by the parties, the record indicates that "Kirby West" is the name of the company for whom Appellee worked. Neither the record nor the parties are clear whether "Kirby West" is also the name of a person. We refer to it only as a business entity.

## II. DISCUSSION

Appellant attacks the judgment of the trial court in eight points of error. In her first point of error, Appellant claims the trial judge erred by failing to recuse himself from the case. In an argument completely devoid of citation to case law, Appellant claims that the trial judge had a duty to recuse himself on his own motion. Whether or not he did, Appellant has waived any error on this ground because she failed to raise it below. If recusal is not raised by proper motion in the trial court, it is waived. *Gulf Maritime Warehouse Co. v. Towers,* 858 S.W.2d 556, 559 (Tex.App.—Beaumont 1993, writ denied); *Humble Exploration Co. v. Browning,* 677 S.W.2d 111, 114 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986). Appellant never filed a motion to recuse the trial judge, nor did she otherwise draw the trial court's attention to the matter. She therefore waived the issue and cannot raise it for the first time on appeal. Accordingly, we overrule her first point of error.

In her second through fourth points of error, Appellant claims the trial court erred by instructing a take-nothing verdict on her claims for damages based on written and oral contracts. In reviewing the granting of an instructed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex. 1978). We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d at 649; *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983). We give the losing party the benefit of all reasonable inferences created by the evidence. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d at 649; *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d at 262. If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case must be reversed and remanded for determination of that issue by a jury.

*Szczepanik v. First S. Trust Co.,* 883 S.W.2d at 649; *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d at 262. This is essentially a "no evidence" standard. Thus, if there is more than a scintilla of evidence to support each element of any of Appellant's causes of action, an instructed verdict was improper. *See Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402, 412 (Tex.App.—El Paso 1994, writ ref'd); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ).

The long-standing rule in Texas is that an employee without a written employment contract is an at-will employee, and the employment relationship is terminable at any time by either party, with or without cause. *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993); *Vida v. El Paso Emp. Fed. Credit Union,* 885 S.W.2d 177, 180 (Tex.App.—El Paso 1994, no writ); *East Line & R.R.R. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). Certain statutory restrictions and one judicial exception to this rule exist, but current Texas law generally allows an employer to discharge an employee for a good reason, a bad reason, or no reason at all. *Vida v. El Paso Emp. Fed. Credit Union,* 885 S.W.2d at 180–81.

In numerous cases, discharged employees have attempted to recover for breach of contract by alleging that their employers' personnel manuals contained enforceable promises altering the at-will relationship. *See Federal Express Corp. v. Dutschmann,* 846 S.W.2d at 283; *Vida v. El Paso Emp. Fed. Credit Union,* 885 S.W.2d at 180; *Hicks v. Baylor Univ. Med. Ctr.,* 789 S.W.2d 299, 303 (Tex.App.—Dallas 1990, writ denied); *Berry v. Doctor's Health Facilities,* 715 S.W.2d 60, 61 (Tex.App.—Dallas 1986, no writ); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ). Texas courts have generally rejected this theory, particularly where a specific disclaimer in the employee handbook warns the employee that the manual is intended to provide guidelines only and does not create contractual rights. Appellee's handbook contains several such provisions, which we outline above. We therefore con-

clude that the disclaimer cases control the instant case.

■ Although courts usually find that general statements about working conditions, disciplinary procedures, or termination rights are not sufficient to change the at-will employment relationship, a handbook may modify the at-will relationship if it specifically and expressly curtails the employer's right to terminate the employee. *McAlister v. Medina Elec. Coop., Inc.*, 830 S.W.2d 659, 664 (Tex.App.—San Antonio 1992, writ denied); *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). The manual must restrict the at-will relationship in a meaningful and special way. *Vida v. El Paso Emp. Fed. Credit Union*, 885 S.W.2d at 181; *Stiver v. Texas Instruments, Inc.*, 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ). The handbook must contain a specific contractual term altering at-will status. *Vida v. El Paso Emp. Fed. Credit Union*, 885 S.W.2d at 181; *Johnson v. Ford Motor Co., Inc.*, 690 S.W.2d 90, 93 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Maus v. National Living Ctrs., Inc.*, 633 S.W.2d 674, 675 (Tex.App.—Austin 1982, writ ref'd n.r.e.); *see also Whitehead v. University of Texas Health Science Ctr.*, 854 S.W.2d 175, 181 (Tex.App.—San Antonio 1993, no writ).

Here, in addition to the effective disclaimers, the handbook fails to alter the at-will employment relationship in any meaningful way. The handbook merely reduces Appellee's employment policies to writing for the benefit and convenience of employees. The employment policies were unilaterally set by Appellee and obligated it to do very little. Thus, Appellant could have been fired for virtually any reason, good, bad, trivial, or otherwise. There existed no written employment contract between the parties, and Appellee therefore did not breach a written contract when it discharged Appellant. Accordingly, we overrule Appellant's second through fourth points of error to the extent they rely on the alleged breach of a written contract.

■ Appellant next claims that Appellee's personnel manager admitted at trial that an oral contract existed between Appel-

lant and Appellee. The manager, Mary Duley, offered the following testimony when examined at trial by Appellant's attorney:

Q. Do you deny that Mrs. Figueroa had an oral contract with Kirby?

A. Yes.

Q. You deny that?

A. Yes.

Q. And what kind of an agreement did she have?

A. We have no contracts with any employees.

Q. I'm asking you, do you have an oral contract that if she came to work and did her work, that y'all would pay her for it?

A. Yes.

Q. So that was oral, wasn't it?

A. Yes.

Q. And you're just, there's a feud as to whether there was one in writing, is this correct?

A. Yes.

Q. But you're not going to deny that there was an oral agreement?

A. That we would pay her for her work.

Q. Was there any oral agreement concerning those handbooks?

A. I'm sorry, I don't understand.

Q. Well, did y'all have an agreement if she followed these rules and regulations, she could be employed there, but if she didn't, she'd have to get off the premises?

A. Right.

Q. So to that extent, we're not in a debate with whether she had an oral agreement—

A. Right.

Q. —with Kirby West?

A. No.

Appellant apparently would have us believe that the foregoing testimony is blatantly contradictory, Duley first denying then admitting the existence of a contract, and that it sufficed to submit the issue to the jury on the theory that the jury could have chosen to disbelieve her first denial. We disagree. First, Duley only admitted that Appellant had to follow certain company policies in

order to be retained as an employee. All employers have policies the violation of which will result in termination. That these policies and their roles are well defined does not produce an enforceable contract. Duley only admitted that Appellant would be terminated for violating certain policies, not that any of these policies saddled Appellee with a contractual obligation. Alternatively, we note that the questions that elicited positive responses from Duley referred to "those handbooks." We therefore confine the scope of Duley's answers to the disputed handbook, which we have already determined does not constitute a contract or in any way alter Appellant's at-will status. We think it difficult, if at all possible, for a writing that fervently disavows any contractual force to provide the basis of an oral contract.[2] Accordingly, Appellant's second through fourth points of error are overruled to the extent they rely on the alleged breach of an oral contract.

 Appellant makes much of Appellee's proffered insubordination rationale for discharging her, arguing that the evidence was insufficient to support the charge. An employer's factual findings are not, however, subject to sufficiency review, and the trial court did not base its decision on Appellant's insubordination. As an at-will employee, Appellee could have fired Appellant for absolutely no reason and could have remained silent about its reasons for doing so. Appellee need not justify the termination in any manner. That Appellee elected to assign some appropriate reason for Appellant's discharge does not alter its ability to fire her at whim. *See Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 212 (Tex.App.—Fort Worth 1984, no writ) (holding that pleading alleging discharge solely for filing lawsuit fails to state a claim absent modification of at-will relationship). Thus, the question is not whether the proffered reason for Appellant's discharge is the true reason, but whether Appellee's plenary power to fire Appellant was in some way circumscribed. We conclude that it was not. Accordingly, we overrule Appellant's second through fourth points of error in their entirety.

 In her fifth point of error, Appellant claims the trial court erred by instructing a verdict against her on her cause of action for negligent termination. Our analysis of Appellant's second through fourth points of error largely disposes of this point of error. Among the elements of a negligence cause of action in this context is the existence of some duty not to terminate Appellant. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987) (holding that duty is first element of negligence). As an at-will employee, however, Appellant was owed no duty concerning continued employment. *Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 925 (Tex.App.—Houston [1st Dist.] 1993, no writ). Thus, there was no duty the breach of which could have supported Appellant's claim for negligent termination. We therefore overrule her fifth point of error.

 In her sixth point of error, Appellant claims the trial court erred by instructing a verdict against her on her cause of action for deceptive trade practices. The Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex.Bus. & Comm. Code Ann. §§ 17.41–17.63 (Vernon 1987 & Supp.1995), protects consumers. Consumer status is an essential element of a DTPA cause of action. *Melody Homes Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex.1987). When the facts bearing on consumer status are undisputed, as they are here, the issue is a question of law for the court. *3Z Corp. v. Stewart Title Guaranty Co.*, 851 S.W.2d 933, 937 (Tex.App.—Beaumont 1993, writ denied); *Federal Deposit Ins. Corp. v. F & A Equip. Leasing*, 854 S.W.2d 681 (Tex.App.—Dallas 1993, no writ). To possess consumer status, a person must seek or acquire goods or services. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981).

---

2. Even if there existed some contract, its term was indefinite, and it was therefore an at-will contract terminable by either party. *Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 212 (Tex. App.—Fort Worth 1984, no writ); *Scruggs v. George A. Hormel & Co.*, 464 S.W.2d 730, 731 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.). Thus, any oral contract that existed between the parties could not have prevented Appellant's discharge for good, bad, or no reason. *Currey v. Lone Star Steel Co.*, 676 S.W.2d at 212.

"Goods" means "tangible chattels or real property," and "services" means "work, labor or services ... furnished in connection with the sale or repair of goods." TEX.BUS. & COMM.CODE ANN. § 17.45 (Vernon 1987).

■ Appellant produced no evidence that she was a consumer, failing even to allege consumer status. Appellant was an employee. She obtained work from Appellee, not goods or services. Although the DTPA is clearly consumer protection legislation, and not a labor law, we need not hold that an employee may never be a consumer. We confine our decision to Appellant's failure to offer any proof of her consumer status. In the employment arena, such failure bars a DTPA claim. *Currey v. Lone Star Steel Co.,* 676 S.W.2d at 213. Accordingly, we overrule her sixth point of error.

In her seventh point of error, Appellant claims the trial court erred by instructing a verdict against her on her cause of action for fraud. Appellant claims that Appellee defrauded Appellant when it distributed the handbook because it contained general representations of fair treatment by which Appellee allegedly never intended to abide.

■ Fraud is based on the making of a false statement of material fact. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983). Failure to perform a **future** act is fraud only when there is no intent to perform the act at the time the representation is made. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992); *Stanfield v. O'Boyle,* 462 S.W.2d 270, 272 (Tex.1971). Further, failure to perform a future act is alone no evidence of fraudulent intent. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986).

■ We have already noted that the terms of the handbook obligate Appellant to do very little. They are merely declarative, unilateral expressions of Appellee's policies. While we are inclined to hold that the handbook contains no representations that could have supported a cause of action for fraud, we instead focus on the evidence of Appellee's intent. Appellant produced no evidence that Appellee never intended to abide by the vague fairness provisions of the handbook.

At best, Appellant produced some evidence that Appellee's conduct ultimately failed to conform to these arguable representations. Evidence of post-representation nonconformity is alone no evidence of fraud. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d at 435. We therefore overrule Appellant's seventh point of error.

■ In her eighth point of error, Appellant claims the trial court erred by excluding from evidence certain fact findings made by the Texas Employment Commission in connection with her claim for unemployment compensation benefits concerning the reasons for her discharge. The Commission found that Appellant was not insubordinate. Although Appellant cites no authority for this argument, we do not pause to resolve the admissibility of the findings because we find that any error that occurred in excluding them was harmless.

We have already determined that Appellee had an unfettered right to terminate Appellant for no reason, and that the truth or falsity of its proffered reason is irrelevant. The identification of a reason simply had no effect on Appellee's absolute power to fire Appellant. Thus, the only purpose for which the findings could have been admitted, to establish that Appellant was fired for a reason other than insubordination, had no bearing on the propriety of Appellant's discharge. The findings therefore could not have been properly used by the jury to support a finding in Appellant's favor on any of her causes of action. Accordingly, we overrule her eighth point of error.

Having, overruled each of Appellant's points of error, we affirm the judgment of the trial court.