

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-16-00330-CV

---

CITY OF DENTON                                                    APPELLANT

V.

BRIAN RUSHING, CALVIN                                            APPELLEES
PATTERSON, AND KEVIN
MARSHALL

----------

### FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 15-10369-362

----------

## OPINION

----------

## I. INTRODUCTION

Appellant City of Denton perfected this interlocutory appeal from the trial

court's denial of the City's plea to the jurisdiction and alternative motion for

traditional summary judgment.[1]  Appellees Brian Rushing, Calvin Patterson, and Kevin Marshall are nonexempt employees of the City working in the Utilities Department.  Appellees filed a breach-of-a-unilateral-contract suit against the City to recover on-call pay they claimed the City owed them under Policy No. 106.06 of the City's Policies and Procedures Manual for on-call periods they had worked.  Because the City's governmental immunity from Appellees' suit is waived by Texas Local Government Code section 271.152, we will affirm the trial court's denial of the City's plea to the jurisdiction or alternative motion for traditional summary judgment.

## II. FACTUAL BACKGROUND

The following facts are undisputed.  The City duly adopted a policies and procedures manual.[2]  The policies in the manual apply to all regular full-time, regular part-time, temporary, and seasonal employees who work for the City.

---

[1]The document filed by the City is titled "Defendant's Plea to the Jurisdiction, or Alternatively for Traditional Summary Judgment."  And the trial court's order denying relief to the City is styled likewise.

[2]Documentary evidence filed by the City and by Appellees establish that municipal ordinances of the City are designated as, and maintained in, the "Code of the City of Denton, Texas."  *See* Code of Ordinances, City of Denton § 2-28 (1966).  Pursuant to section 2-28 of this Code, the City expressly delegates to the City Manager authority to issue such administrative procedures and directives as he deems necessary to implement approved policies relating to personnel and internal operation matters.  Each policy, procedure, and directive of the City requires Executive Committee approval.  *See* City of Denton, Policies & Procedures Manual, Policy No. 3.00. The City uses its policies and procedures manual as a means to conduct business.  *See id.*, Policy No. 1.00.  The City mandates that its procedures and directives "shall" be contained in a manual available for inspection by employees of the City.  *Id.*

*See* City of Denton, Policies & Procedures Manual, Policy No. 7.00(I).  Policy No. 106.06 contained in the City's policies and procedure manual defines and establishes the City's pay practices and administrative procedures for response time and on-call duty.  *Id.*, Policy No. 106.06.[3]  It provides that employees must respond within thirty minutes while serving on call and "must adhere to all City policies including the Anti-Substance Abuse and Rehabilitation policy" while on call and further provides that the failure to report any variance from City policies while on call may result in forfeiture of on-call pay and in disciplinary actions, including termination.  *See id.*  Policy No. 106.06 also sets forth the pay the City will provide employees for on-call services and includes charts setting forth specific examples of how on-call pay is calculated.  *Id.*  The terms of the policy authorize department heads to require on-call service from employees at their discretion based on the needs of their department.  *Id.*

Appellees are regular, full-time, hourly-paid, non-exempt employees of the City.  All three Appellees worked week-long on-call shifts[4] in addition to their normal work hours at least one week per month each year between 2011 and 2015.  Appellee Patterson was disciplined when he was working an on-call shift and failed to respond within the required thirty-minute timeframe because his cell

---

[3]A copy of Policy No. 106.06 is attached hereto as an Appendix.

[4]According to the City, an on-call shift lasted from 3 p.m. one Friday until 7 a.m. the following Friday.

3

phone had died. The City did not pay Appellees the on-call pay required by policy 106.06 for the on-call time Appellees had worked.

### III. PROCEDURAL BACKGROUND

Appellees filed suit against the City for breach of a unilateral contract, alleging that a unilateral employment contract was created when the City, as the Appellees' employer, promised each of the Appellees in writing through its ordinances and policies the "on-call pay" benefits set forth in Policy No. 106.06 in exchange for each of the Appellees' performance of on-call services for the City, and each of the Appellees, as the City's employees, performed the on-call services demanded of them by the City. Appellees alleged the City breached this unilateral contract by failing to pay for the on-call services Appellees had provided and that their breach-of-unilateral-contract suit against the City fell within section 271.152's waiver of immunity. *See* Tex. Loc. Gov't Code Ann. § 271.152 (West 2016).

The City filed a plea to the jurisdiction and alternative motion for traditional summary judgment. Both asserted that section 271.152's waiver of immunity did not apply to Appellees' suit for breach of a unilateral contract.[5] The City asserted that its governmental immunity was not waived and that the trial court lacked jurisdiction. According to the City, section 271.152 did not waive its immunity

[5]The City did not move for summary judgment on the affirmative defense of immunity from liability but instead moved for summary judgment on the ground that the waiver of immunity pleaded by Appellees—Texas Local Government Code Section 271.152—in fact did not waive the City's immunity from suit.

4

because no written contract existed, as required under section 271.152, and because a disclaimer in the City's policies and procedures manual evidenced the lack of a contract.[6]  After a hearing, the trial court denied the City's plea to the jurisdiction and alternative motion for traditional summary judgment.

The City perfected this appeal and raises three issues asserting that section 271.152 is inapplicable to Appellees' suit, that the City was entitled to summary judgment as a matter of law, and that the trial court lacks jurisdiction because the City possesses immunity.[7]

---

[6]The disclaimer relied upon by the City provides, in pertinent part:

**CONTENTS OF THIS MANUAL DO NOT IN ANY WAY CONSTITUTE THE TERMS OF A CONTRACT OF EMPLOYMENT AND SHOULD NOT BE CONSTRUED AS A GUARANTEE OF CONTINUED EMPLOYMENT WITH THE CITY OF DENTON. EMPLOYMENT WITH THE CITY OF DENTON IS ON AN AT WILL BASIS. * * * ANY ORAL OR WRITTEN STATEMENTS BY ANYONE, (EXCEPT INDIVIDUAL WRITTEN EMPLOYMENT AGREEMENTS SPECIFICALLY AUTHORIZED BY THE CITY COUNCIL) TO THE CONTRARY ARE INVALID AND SHOULD NOT BE RELIED UPON BY ANY PROSPECTIVE OR EXISTING EMPLOYEE. THE CITY OF DENTON RESERVES THE RIGHT TO ALTER OR AMEND THE CONTENTS OF THIS MANUAL AT ANY TIME WITHOUT NOTICE.**

[7]The City's appellate brief contains no arguments or authorities in connection with its second or third issues; the sole mention of these issues is in the list of "issues presented" at the front of the City's brief.  Because the City's motion for summary judgment was based on immunity from suit (a jurisdictional argument) rather than immunity from liability (an affirmative defense), the City's second issue raises only the same jurisdictional challenge as the City's first issue.  And because the City's third issue challenges the trial court's lack of jurisdiction based on the City's purported immunity from suit, the City's third issue likewise raises only the same jurisdictional challenge as the City's first issue. Thus, we address all three of the City's issues together to determine whether the

5

## IV. ANALYSIS

## A. Standard of Review

In filing a plea to the jurisdiction, a litigant challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's ruling on the plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the existence of jurisdictional facts, like the City's plea to the jurisdiction and motion for traditional summary judgment did, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226–28; *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

---

City's immunity from Appellees' suit is waived by section 271.152 of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 271.152.

### B. The Law Concerning Waiver of Immunity by Section 271.152

The waiver of immunity set forth in section 271.152 provides as follows:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152. For section 271.152's waiver of immunity to apply, three elements must be established: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by section 271.151(3); (2) the entity must be authorized by statute or the constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2). *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

Under the third element, for a contract to be subject to section 271.152's waiver of immunity, it (1) must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity. Tex. Loc. Gov't. Code Ann. § 271.151(2) (West 2016) (defining "contract subject to this subchapter"); *see also City of Houston*, 353 S.W.3d at 135; *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 302 (Tex. 2014) (recognizing that the principle dispute in the appeal was whether the parties' contract was a contract subject to subchapter 271 and holding that "any written, authorized contract that states the essential terms of an agreement for

7

providing services to the governmental entity triggers the waiver of immunity under chapter 271).

### C. Application of the Law to the Present Facts

We examine whether the three elements necessary for section 271.152's waiver of immunity to apply are present here.

### 1. First Element—Defendant Is a Local Governmental Entity

Concerning the first element, the City is a home rule municipality, chartered under the Constitution of the State of Texas. *See* Tex. Loc. Gov't Code Ann. § 9.008(b) (West 2008). The City is, and admits in its briefing that it is, a municipality and hence a "local governmental entity" as defined by section 271.151(3). *See id.* § 271.151(3)(A); *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 345 (Tex. 2006) ("A local governmental entity is defined to include a municipality."). Thus, the first element necessary to trigger section 271.152's waiver of immunity—that the party against whom the waiver is asserted must be a "local governmental entity" as defined by section 271.151(3)—was established.

### 2. Second Element—Defendant Is Authorized to Enter into Contracts

Concerning the second element, the City concedes in its briefing that it is authorized by statute or the constitution to enter into contracts (although, as discussed below, the City asserts the Texas constitution prohibited it from entering into this particular contract). Thus, the second element necessary to trigger section 271.152's waiver of immunity—that the entity must be authorized by statute or the constitution to enter into contracts—was established.

8

### 3. Third Element—Defendant Entered into a Contract Subject to this Subchapter as Defined in Section 271.151(2)

Concerning the third element, the City must have entered into a contract that is "subject to this subchapter" as defined by section 271.151(2); and section 271.151(2) defines "contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." Tex. Loc. Gov't Code Ann. § 271.151(2); *see also City of Houston*, 353 S.W.3d at 135 (breaking down the definition of "contract subject to this subchapter" into five requisites). The City argues that this third element is not met for numerous reasons: because Policy No. 106.06 is not a contract; because it does not contain all "essential terms of Appellees' employment for services"; because it does not contain "specified services or goods"; because it was not properly executed; and because the City allegedly had no authority to enter this particular contract, if it is a contract, because "Appellees are now asserting entitlement to additional compensation for services already performed, which is prohibited by the Texas [c]onstitution." We address each of these contentions.

The City contends that Policy No. 106.06 is not a contract. According to the City, Policy No. 106.06 is not a contract because "its applicability was both discretionary and conditional" and because the no-alteration-of-the-employment-at-will disclaimer in the policies and procedures manual precludes the formation

9

of a contract. The City attempts to factually distinguish the cases relied upon by Appellees in support of their contention that Policy No. 106.06 is a unilateral contract.

We first address whether Policy No. 106.06 is a contract—albeit a unilateral contract. A unilateral contract may meet the definition of a "contract subject to this subchapter" set forth in section 271.151. *See City of Houston*, 353 S.W.3d at 134 (holding City's ordinance promising firefighters specific compensation in the form of overtime pay and termination pay was a unilateral contract that waived the City's immunity from firefighters' breach-of-contract claim based on City's nonpayment of overtime and termination pay). Unlike a bilateral contract, in which both parties make mutual promises, a unilateral contract is created when a promisor promises a benefit if a promisee performs. *Id*. at 135–36 (citations and quotations omitted). The requirement of mutuality is not met by an exchange of promises; rather, the valuable consideration contemplated in "exchange for the promise is something other than a promise," i.e., performance. *Id*. at 136. A unilateral contract becomes enforceable when the promisee performs. *Id*. Summing up the unilateral contract analysis, the Texas Supreme Court has explained that "*a unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs.*" *Id*. (emphasis added); *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 303 (Tex. 2009); *see also Lascano v. Huser Huser Constr. Co.*, No. 04-14-00311-CV, 2015 WL

10

3398360, at *2 (Tex. App.—San Antonio May 27, 2015, no pet.) (mem. op.) (recognizing employer's promise that employee would be paid if he continued working on project created unilateral contract because employee continued working until project was completed).

In Policy No. 106.06, the City promised certain benefits (namely, specifically-calculated on-call pay) to Appellees—who were full-time, regular employees to whom the City's policies and procedures expressly applied—in exchange for the Appellees' performance of being on call during the on-call shifts scheduled for each Appellee, and each Appellee performed. Consequently, a binding unilateral contract was formed. *See City of Houston*, 353 S.W.3d at 138 (holding City's ordinance promising firefighters specific compensation in the form of overtime pay and termination pay when accepted by the firefighters' performance became a binding unilateral contract); *Vanegas*, 302 S.W.3d at 304 (holding employer's promise to pay any remaining employees 5% of the proceeds when AES was sold constituted unilateral contract that became enforceable upon the employees' performance of staying with AES until the sale); *Paniagua v. City of Galveston, Tex.*, 995 F.2d 1310, 1315 (5th Cir. 1993) (holding standby pay provision in City of Galveston's Rules and Regulations constituted unilateral contract by the City to pay employee who was required to work and did work standby hours); *see also Lascano*, 2015 WL 3398360, at * 2 (holding employer's promise that employee would be paid if he continued working on project created unilateral contract because employee continued

11

working until project was completed). We hold that Policy No. 106.06's promises of on-call pay created a unilateral contract that became binding and enforceable when Appellees accepted by performing on-call services in accordance with the requirements set by the City for on-call service. We overrule the portion of the City's first issue asserting that no contract was formed because Policy No. 106.06's application is allegedly discretionary and conditional and asserting that the holdings of *City of Houston* and *Paniagua* do not apply to these facts.

The City also asserts that no contract exists because of the no-alteration-of-the-employment-at-will disclaimer in the City's policies and procedures manual.[8] The disclaimer, however, is limited to disclaiming any alteration of an employee's at-will employment status. The unilateral contract formed by the City's promise in Policy No. 106.06 of certain benefits to employees——on-call pay calculated in a specific way——and Appellees' acceptance of that contract by performing the on-call service mandated of them by the City has zero effect on Appellees' status as at-will employees. The Texas Supreme Court has explained that under Texas law, an at-will employment relationship does not prevent an employer and employee from entering into an otherwise enforceable agreement. *See Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644–45 (Tex. 1994), *abrogated on other grounds by Marsh USA Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2011). Stated another way, at-will employees may contract with their employers

---

[8]*See* disclaimer, *supra* note 7.

on any matter "*except those which would limit the ability of either employer or employee to terminate the employment at will.*" *Light*, 883 S.W.2d at 644 (emphasis added). The City's unilateral contract to pay employees on-call pay for on-call services rendered by the employees does not limit the ability of either Appellees or the City to terminate the employment at will. *Cf., e.g., Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) (explaining that no-alteration-of-employment-at-will disclaimer precludes a contractual employment relationship); *Figueroa v. West*, 902 S.W.2d 701, 704–05 (Tex. App.—El Paso 1995, no writ) (same). We overrule the portion of the City's first issue asserting that the no-alteration-of-the-employment-at-will disclaimer precludes Policy No. 106.06 from forming a unilateral contract for on-call pay to Appellees for on-call services actually performed by Appellees.

The City also contends that Policy No. 106.06 is not a "contract" within section 271.151(2)'s definition of "contract subject to this subchapter" because it does not contain all "essential terms of Appellees' employment for services" and does not contain "specified services or goods." The City cites no legal authority for these contentions, and a review of Policy No. 106.06 proves otherwise. Policy No. 106.06 contains extremely specific essential terms setting forth in detail how an employee's on-call pay will be calculated. *See* City of Denton, Policies & Procedures Manual, Policy No. 106.06. It likewise contains specific requirements governing the service provided by employees working an on-call shift. *Id.* According to the Policy, when working an on-call shift, an employee

13

must be able to report back to work within thirty minutes of being called. *Id.* And while working an on-call shift, the Policy requires employees to adhere to all City policies, including the City's anti-substance-abuse policy. *Id.* The Policy provides that any variance from such policies may result in disciplinary actions, including termination. *Id.* We hold that Policy No. 106.06 contains the essential terms of the City's unilateral contract for on-call services that was accepted by Appellees by working the on-call shifts the City assigned them to work. We overrule the portion of the City's first issue claiming that Policy No. 106.06 cannot be a contract under section 271.151(2) because it lacks essential terms and does not specify services provided to the City.

The City next contends that Policy No. 106.06 is not a "contract" within section 271.151(2)'s definition of "contract subject to this subchapter" because it was not properly executed. As pointed out by Appellees, and as set forth in evidence submitted to the trial court, the City's Policies, including Policy No. 106.06, were executed by the City in accordance with the powers delegated pursuant to section 2-28 of the City Code, including the City Manager's issuing them after Executive Committee approval; publishing them in the Policies & Procedures Manual; distributing them to each Department, including the Utilities Department; and mandating that they be made accessible to each of the City's employees, including Appellees. *See* Code of Ordinances, City of Denton § 2-28; *City of Houston*, 353 S.W.3d at 137. Nothing further is required. *See City of Houston,* 353 S.W.3d at 139 (recognizing that "executed" for purposes of section

14

271.151(2) means finished or completed and that it is not necessary for a City to sign an instrument in order to execute it). We hold that Policy No. 106.06 was properly approved and adopted by the City; we overrule the portion of the City's first issue claiming that Policy No. 106.06 cannot be a contract under section 271.151(2) because it was not properly executed.

Lastly, the City contends that Policy 106.06 is not a "contract" within section 271.151(2)'s definition of "contract subject to this subchapter" because "Appellees are asserting entitlement to additional compensation for services already performed, which is prohibited by the Texas [c]onstitution." The City relies upon Texas constitution article III, section 53.[9] Tex. Const. art. III, § 53. We have reviewed this section, and we do not read it as prohibiting the City from paying employees promised on-call pay for on-call shifts the City required its employees to work. *See id.* The constitutional provision simply "prohibits the legislature from authorizing any city or municipal corporation to grant *extra compensation* after service has been rendered." *Id.* (emphasis added); *see also, e.g.*, *Olshan Demolishing Co. v. Angleton Indep. Sch. Dist.*, 684 S.W.2d 179, 185 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding article III, section 53 did not prohibit payment of additional funds when contract provided that sum

---

[9]The City acknowledges, "Denton understands that Appellees claim a past entitlement to such pay[] and that there are numerous cases holding that this provision [article III, section 53 of the Texas constitution] does not prohibit back pay of previously entitled funds." The City argues that "[t]he point, though, is that such an argument is inconsistent with Appellees' argument that they can unilaterally claim entitlement by subsequent performance."

15

would be equitably adjusted if a concealed condition was encountered in demolition), *abrogated on other grounds by Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 305 (Tex. 1988). Thus, the City is prohibited from granting *extra compensation*, not from granting *any compensation* for services provided to the City. Appellees proved through affidavit evidence that their normal work hours did not include being on call a week at a time for twenty-four hours each day; yet, in addition to their normal work hours, Appellees also worked one-week on-call shifts when assigned to work them by the City. Policy No. 106.06's promise by the City to pay Appellees for on-call services rendered to the City is not a promise of extra compensation because the City had not already paid Appellees for the on-call services it demanded from them. We overrule the portion of the City's first issue claiming that it does.

### 4. Section 271.152's Waiver of the City's Immunity from Suit Applies to Appellees' Breach-of-a-Unilateral-Contract Claim

Having determined that the three elements necessary to trigger section 271.152's waiver of immunity have been established—(1) the City is a "local governmental entity" as defined by section 271.151(3); (2) the City is authorized by statute or the constitution to enter into contracts; and (3) the City in fact entered into a unilateral contract that is "subject to this subchapter," as defined by section 271.151(2)—we hold that the City is not immune from Appellees' suit. *See City of Houston*, 353 S.W.3d at 134. We overrule the City's first issue.

16

## V. CONCLUSION

Having overruled the City's first issue in toto—and by addressing the City's first issue having addressed the contention raised by the City in each of its three issues that section 271.152 does not waive the City's immunity from Appellees' suit—and having held that section 271.152 does waive the City's immunity from Appellees' breach-of-a-unilateral-contract claim, we overrule all three of the City's issues. We affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DELIVERED: March 23, 2017

17

# APPENDIX

**POLICY/ADMINISTRATIVE PROCEDURE/ADMINISTRATIVE DIRECTIVE**

| SECTION: HUMAN RESOURCES | REFERENCE NUMBER: 106.06 |
|---|---|
| SUBJECT: WAGE AND SALARY PLAN | INITIAL EFFECTIVE DATE: 07/01/95 |
| TITLE: RESPONSE TIME AND ON-CALL DUTY | LAST REVISION DATE: 06/22/13 |

POLICY STATEMENT:

Although residency within the city limits is not a condition of employment per City policy and State law, there are certain positions that require a reasonable response time to calls outside normally scheduled work hours. This policy defines and establishes the City's pay practices and administrative procedures for response time and on-call duty. Department Directors shall establish standards, written procedures, and schedules for reasonable response times and on-call duty based on departmental operations.

DEFINITIONS:

I.   ON-CALL

   A.   An on-call period shall be a period of time during which an employee is not actually performing work but is <u>scheduled</u> to remain at, near, or able to return to work for operational requirements that may develop outside normally scheduled work hours. (Scheduled and unscheduled meetings are not considered on-call requests. Meetings are considered time worked as straight time unless the employee has worked over 40 hours in the same week, where the overtime policy would be applicable.)

   B.   An on-call period shall be defined as seven (7) consecutive 24-hour days.

II.   EMERGENCY CALL BACK

   A.   On-call should not be confused with emergency call-back. All City of Denton employees are subject to call-back during an emergency situation; however, employees are not subject to a response time, nor will they be subject to disciplinary action if they are not able to respond.

**POLICY/ADMINISTRATIVE PROCEDURE/ADMINISTRATIVE DIRECTIVE (Continued)**

| TITLE: | RESPONSE TIME AND ON-CALL DUTY | REFERENCE NUMBER: 106.06 |
|---|---|---|

B. For emergency call-back, the 24-hour period shall begin at the time of travel to the work site.

III. RESPONSE TIME

A. Response time is the length of time required for a reasonable response to an on-call request.

B. Departmental response times may vary depending on business necessity.

ADMINISTRATIVE PROCEDURES:

I. Department Directors shall establish reasonable, minimum response times for their departments.

II. Department Directors, or their designee, shall develop on-call schedules with no preferential treatment given to any employee based on departmental operations. Qualified employees are to be scheduled on a rotation basis to prevent fatigue and safety hazards from too many long hours.

III. Employees who are scheduled on-call shall be required to provide their supervisor or his/her designee a phone number at which they will be able to be reached at any time during the on-call period. A pager or department issued radio, if available, can be used as a form of communication during the period an employee is on-call.

IV. Employees who have a personal emergency or are sick while on-call shall notify their supervisor/manager of their inability to continue serving on-call as soon as practical, so that their on-call responsibilities can be transferred to another employee. If on-call duties are transferred to another employee, any applicable on-call compensation for the 24-hour period is forfeited and will be given to the employee covering. Additionally, accumulated sick leave or other leave accruals can not be used since the on-call hours are outside of the normal work schedule.

V. In the event a conflict arises with the on-call schedule, an employee may be able to trade his/her oncall assignment. However, prior to trading assigned on-call duty with another employee, an employee must get approval from their supervisor/manager. On-call duty must be traded in full 24hour increments. If an employee gives their call to another, any applicable on-call compensation for the 24-hour period is forfeited and will be given to the employee covering.

**POLICY/ADMINISTRATIVE PROCEDURE/ADMINISTRATIVE DIRECTIVE (Continued)**

| TITLE: | RESPONSE TIME AND ON-CALL DUTY | REFERENCE NUMBER:<br>106.06 |
|---|---|---|

VI. Employees who are on-call must respond while serving on-call and adhere to all City policies including the Anti-Substance Abuse and Rehabilitation Policy (#108.12). Failure to report without proper approval or any variance from City policies may result in forfeiture of on-call pay, if applicable, and in disciplinary actions, including termination.

VII. Employees who have questions regarding on-call duty assignments or pay should contact their immediate supervisor/manager. Further questions concerning this policy can be directed to the Human Resources Department.

COMPENSATION DURING AN ON-CALL/EMERGENCY CALL-BACK PERIOD

I. Department heads, or designees, will determine the appropriate response time for their department/division(s). Any non-exempt employee who is scheduled on-call, whose departmental response time is defined to be thirty minutes (30) minutes or less of being called, and who will be subject to disciplinary action if he/she does not return without proper approval or does not adhere to City policies while being scheduled on-call will be compensated "on-call pay" as follows:

A. One-half (1/2) hour of pay at regular rate of pay for each 24-hour period required to be on-call during the employees normal scheduled work week (typically Monday – Friday but may vary for 24-hour operations).

B. Two (2) hours of pay at regular rate of pay for each 24-hour period required to be on-call on the employees normal scheduled days off (typically Saturday and Sunday but may vary for 24-hour operations) and on observed City holidays in which the employee is scheduled off.

C. The hours paid for being scheduled on-call are in addition to actual hours worked during the normal work week or actual hours worked during on-call status and will be considered "time worked" for overtime purposes.

D. Employees who are not scheduled to be on-call, but are subject to emergency call-back, are not eligible for the on-call compensation described above.

E. Police and Fire civil service employees who receive on-call assignment pay are not eligible for the on-call compensation described above.

**POLICY/ADMINISTRATIVE PROCEDURE/ADMINISTRATIVE DIRECTIVE
(Continued)**

| TITLE: | RESPONSE TIME AND ON-CALL DUTY | REFERENCE NUMBER: 106.06 |
|---|---|---|

II. Any non-exempt employee who is called to work outside his/her normal work schedule, whether scheduled on-call or during an emergency call-back, shall be paid for any time worked during the call back period or a minimum of two (2) hours, whichever is greater, in a 24-hour period. In accordance with the Fair Labor Standards Act (FLSA), if an employee is called out, paid time will include travel time as time worked.

III. Time worked while on-call or during an emergency call-back will be calculated at the employee's regular rate of pay; overtime compensation is applicable only for non-exempt employees when total hours worked exceeds the regular full-time work week (i.e., generally forty (40) hours per week for all City employees, except Civil Service Fire Fighters working on shift, where the exception is fifty-six (56) hours per week). See Overtime, Policy #106.04.

EXCLUSIONS

Public Safety Dispatchers will receive on-call pay; however, due to the nature of their operations, aspects of this policy will not apply. Instead, Public Safety Dispatchers will receive on-call pay in accordance with the Police Department's SOPs.

**POLICY/ADMINISTRATIVE PROCEDURE/ADMINISTRATIVE DIRECTIVE
(Continued)**

| TITLE: | RESPONSE TIME AND ON-CALL DUTY | REFERENCE NUMBER: 106.06 |
|---|---|---|

*On-Call Pay Example*:

Example 1:

A non-exempt employee normally works an eight (8) hour shift Monday – Friday. He is scheduled on-call Monday – Sunday. He is called back to work after hours on Friday for a total of 4 hours and Saturday for 1 hour. No other overtime is worked, nor did he miss work for any reason.

| Mon | Tues | Wed | Thur | Fri | Sat | Sun |
|---|---|---|---|---|---|---|
| 8 reg hours (straight time) | 8 reg hours (straight time) | 8 reg hours (straight time) | 8 reg hours (straight time) | 8 reg hours (straight time) | | |
| 1/2 hr on-call (overtime) | 1/2 hr on-call (overtime) | 1/2 hr on-call (overtime) | 1/2 hr on-call (overtime) | 1/2 hr on-call (overtime) | 2 hrs on-call (overtime) | 2 hrs on-call (overtime) |
| | | | | 4 hrs overtime | 1 hour worked, but paid for a minimum of 2 hours - at overtime | |
| Total time for pay purposes: <br><br> 40 hours regular schedule at straight time <br> 12.5 hours overtime (6.5 hours on-call and 6 hours overtime at time and ½ since he worked 40 hours in the week (4 hours on Friday and a 2  hour minimum on Saturday) | | | | | | |

Example 2:

A non-exempt employee normally works an eight (8) hour shift Monday – Friday. He calls in sick on Thursday. He is scheduled on-call Monday – Sunday, but because he is sick on Thursday, he gives that on-call shift to another employee. He is not called in to work during the on-call period.

| Mon | Tues | Wed | Thur | Fri | Sat | Sun |
|---|---|---|---|---|---|---|
| 8 reg hours (straight time) | 8 reg hours (straight time) | 8 reg hours (straight time) | 8 hours sick (straight time) | 8 reg hours (straight time) | | |
| 1/2 hr on-call (overtime) | 1/2 hr on-call (overtime) | 1/2 hr on-call (overtime) | On-call time given to another | 1/2 hr on-call (overtime) | 2 hrs on-call (overtime) | 2 hrs on-call (overtime) |

**POLICY/ADMINISTRATIVE PROCEDURE/ADMINISTRATIVE DIRECTIVE
(Continued)**

| TITLE: | RESPONSE TIME AND ON-CALL DUTY | REFERENCE NUMBER: 106.06 |
|---|---|---|

| | | | employee | | | |
|---|---|---|---|---|---|---|
| Total time for pay purposes:<br><br>32 hours regular schedule at straight time<br>8 hours sick (which will be paid at straight time)<br>6 hours overtime at straight time. This is not calculated at time and ½ because he was sick, and sick leave is not considered time worked for overtime purposes. He also gave up ½ hour of on-call pay on Thursday when he was sick (which will be paid to the employee who took his shift). | | | | | | |

*Emergency Call-Back Pay Example:*

A non-exempt employee normally works an eight (8) hour shift Monday – Friday. A main water pipe busted late Thursday evening which left a neighborhood without water. The utility dispatcher called him and asked if he could respond to the main break. He agreed and ended up working 7 hours Thursday evening. No other overtime is worked, nor did he miss work for any reason.

| Mon | Tues | Wed | Thur | Fri | Sat | Sun |
|---|---|---|---|---|---|---|
| 8 reg hours (straight time) | 8 reg hours (straight time) | 8 reg hours (straight time) | 8 reg hours (straight time) | 8 reg hours (straight time) | | |
| | | | 7 hours for emergency call back | | | |
| Total time for pay purposes:<br><br>40 hours regular schedule at straight time<br>7 hours overtime at time and ½ since he worked 40 hours in the week (for the Thursday night emergency call back) | | | | | | |