# IN THE SUPREME COURT OF TEXAS

════════════

No. 17-0336

════════════

CITY OF DENTON, PETITIONER,

v.

BRIAN RUSHING, CALVIN PATTERSON AND KEVIN MARSHALL, RESPONDENTS

════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

════════════════════════════════════════════

**Argued January 9, 2019**

JUSTICE DEVINE delivered the opinion of the court.

In this interlocutory appeal from an order denying a city's plea to the jurisdiction and alternative motion for summary judgment, we must determine whether Local Government Code section 271.152, which waives a city's immunity from suit on certain contracts, applies to these underlying claims. The Local Government Code provides that a governmental entity that is authorized by law to contract and that enters into a contract waives its "immunity to suit for purposes of adjudicating a claim [under] the contract." TEX. LOC. GOV'T CODE § 271.152. At issue here is whether a contract exists. The court of appeals concluded that the City's Policies and Procedures Manual created a unilateral contract that certain employees could enforce under the statutory waiver and therefore affirmed the trial court's order. 521 S.W.3d 88, 97 (Tex. App.—Fort

Worth 2017). We disagree that such a contract was created and accordingly reverse the court of appeals and render judgment sustaining the City's jurisdictional plea.

I

Brian Rushing, Calvin Patterson, and Kevin Marshall (collectively "Rushing") are full-time, hourly-paid employees in the City of Denton's Utilities Department. They are all entitled to overtime pay under the Fair Labor Standards Act. *See generally* 29 U.S.C. § 207. As part of their jobs, all three worked uncompensated on-call shifts between 2011 and 2015. Policy 106.06 of the City's Policies and Procedures Manual defines the rights and responsibilities of an on-call employee. An "on-call period", as defined by the Manual, is "a period of time during which an employee is not actually performing work but is scheduled to remain at, near, or able to return to work for operational requirements that may develop outside normally scheduled work hours." An on-call period lasts for seven days. If an employee is called into work, he is required to respond within thirty minutes. If an employee does not respond within thirty minutes, the employee can be disciplined.

Policy 106.06 was first adopted by City Council resolution in 1995. In the 1995 policy, on-call time was not "compensated or credited as time worked." In 2013, however, the City Manager modified Policy 106.06. The City Manager's revisions removed the part of the policy stating that on-call time was not compensated and defined an explicit pay schedule for on-call time. These amendments were not approved by the City Council. Rather, the amendments were reviewed by the City's Executive Committee before the City published them in the Manual.

Apart from Policy 106.06, the Manual also contains a general disclaimer that states:

2

*The contents of this manual do not in any way constitute the terms of a contract of employment* and should not be construed as a guarantee of continued employment with the City of Denton. Employment with the City of Denton is on an at will basis. This means that the employment relationship may be terminated at any time by either the City or the employee for any reason not expressly prohibited by law. Any oral or written statements by anyone, (except individual written employment agreements specifically authorized by the City Council) to the contrary are invalid and should not be relied upon by any prospective or existing employee. The City of Denton reserves the right to alter or amend the contents of this manual at any time without notice.

Emphasis added. After the City notified Rushing that he would not be compensated for on-call shifts worked between 2011 and 2015, he sued the City for breach of contract, alleging that Policy 106.06 constituted a unilateral contract that the City breached.

II

After Rushing filed suit, the City filed a plea to the jurisdiction. In this plea, the City argued that governmental immunity was not waived because Policy 106.06 did not meet the statutory definition of a contract. *See* TEX. LOC. GOV'T CODE § 271.151(2)(A) (defining what contracts are "subject to this subchapter"). The City's argument focused on the general disclaimer in the Manual to show that the City lacked any contractual intent when drafting the Manual. Rushing argued, however, that Policy 106.06 constituted the terms of a unilateral contract that Rushing accepted and was therefore due compensation. *See City of Houston v. Williams*, 353 S.W.3d 128, 137–39 (Tex. 2011) (determining that a city ordinance may be considered a unilateral contract). The trial court denied the City's plea, and the City appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

The court of appeals affirmed the trial court's order denying the jurisdictional plea. 521 S.W.3d at 97. The court first determined that Policy 106.06 was a valid unilateral contract that met

3

the statutory definition of a "contract subject to this subchapter." 521 S.W.3d at 94 (quoting TEX. LOC. GOV'T CODE § 271.151(2)(A)). The court of appeals further dismissed the City's argument under the Manual's disclaimer, concluding that it applied only to an employees's at-will status. *Id.* at 95. Because an at-will employment relationship does not prevent an employer from entering into other enforceable contracts with its employees, the court held that the disclaimer did not waive contractual intent. *Id.*; *see also Light v. Centel Celluar Co. of Tex.*, 883 S.W.2d 642, 644–45 (Tex. 1994), *abrogated on other grounds by Marsh USA Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2011).

The City also argued that Policy 106.06 was not a contract because the 2013 modifications to the policy were not properly executed by the City Council. The court of appeals disagreed. 521 S.W.3d at 96. Even though the City Council had not officially enacted the changes by ordinance, it had delegated the power to amend existing policies to the City Manager, subject to Executive Committee approval. *Id.*; *see also* Denton, Tex., Code of Ordinances ch. 2, art. II, § 2-28. Accordingly, the court of appeals determined that section 271.152 waived governmental immunity from Rushing's breach of contract claim and affirmed the trial court's judgment. 521 S.W.3d at 97.

III

Cities enjoy governmental immunity when they are performing governmental functions. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). The legislature, however, has waived governmental immunity for certain contracts:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE § 271.152. A "contract subject to this subchapter" is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE § 271.151(2)(A). We have broken down section 271.151(2) into five required elements that must be met before immunity is waived: "(1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity." *Williams*, 353 S.W.3d at 135.

The City argues that Policy 106.06 is not a written contract because the Manual containing the policy disclaims contractual intent and, in any event, was not "properly executed" because the City Council never formally approved its revisions. These arguments put in issue two of the elements required to waive the City's immunity: (1) the existence of a written contract and (2) its proper execution. As to the first, the City submits that the Manual's disclaimer of contractual intent prevents Policy 106.06 from being construed as a unilateral contract. Even though a provision by itself might otherwise suggest contractual intent, disclaimers in the document can negate the existence of such intent. *Cty. of Dallas v. Wiland*, 216 S.W.3d 344, 352, 354 (Tex. 2007) (explaining that the county's policy provisions did not create a contractual right because the provisions expressly disavowed any intent to contract).

The court of appeals concluded that the disclaimer was only intended to preserve an employees's at-will status. Indeed, the disclaimer rejects any construction of the Manual "as a guarantee of continued employment" or that employment with the City is anything other than "at will." But the disclaimer also provides that "[t]he contents of this manual do not in any way

5

constitute the terms of a contract of employment . . . ." Interpreting Policy 106.06 to be a unilateral contract regarding Rushing's employment conflicts with this part of the disclaimer. *See Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 803 (Tex. App.—Dallas 2003, no pet.) (finding no employment contract where an employee handbook contained an express disclaimer); *Werden v. Nueces Cty. Hosp. Dist.*, 28 S.W.3d 649, 651 (Tex. App.—Corpus Christi 2000, no pet.) (same); *Gamble v. Gregg Cty.*, 932 S.W.2d 253, 255 (Tex. App.—Texarkana 1996, no writ) ("A personnel manual does not create property interests in the stated benefits and policies unless some specific agreement, statute, or rule creates such an interest."). To determine the disclaimer's meaning we must take a holistic approach that considers the entire disclaimer "in an effort to harmonize and give effect to all the provisions" contained within. *Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 906 (Tex. 2016) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). The disclaimer opens with the unequivocal statement that the policies within the Manual, including Policy 106.06, do not "constitute the terms of a contract of employment." We need not look any further to negate contractual intent. *See Wiland*, 216 S.W.3d at 354 (acknowledging that an employee manual can disclaim contractual rights allegedly contained within the manual).

Rushing further argues that Policy 106.06 constitutes the terms of a unilateral contract because it mirrors the city ordinance in *Williams*, which we held created a valid unilateral contract between the City of Houston and its firefighters. *See* 353 S.W.3d at 137–39. In *Williams*, the City of Houston's ordinances promised its firefighters specific compensation for overtime and termination pay. *Id.* at 138. The firefighters sued for breach of contract, alleging underpayment.

*Id.* at 131. We held that the mandatory language of the ordinances created an enforceable, unilateral contract that met all the requirements of section 271.151(2). *Id.* at 137–39.

Policy 106.06, however, is unlike the ordinances at issue in *Williams*. *Williams* dealt with city ordinances, while Policy 106.06 is a provision of a policies and procedures manual. *See id.* at 135. Although city ordinances may create enforceable contracts, we have not previously held that a municipality's policies and procedures manual can create an enforceable contract. *Compare id.* at 137–38 (finding that a city ordinance may create a unilateral employment contract), *and Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (recognizing that ordinances may be read together as a single contract to determine purpose or intent), *and City of San Antonio v. Frizzell*, 91 S.W.2d 1056, 1057 (Tex. 1936) (recognizing an ordinance as a contractual provision to move the plaintiff's barber shop), *and Byrd v. City of Dallas*, 6 S.W.2d 738, 741 (Tex. 1928) (recognizing that an ordinance authorizing pensions to police and fire department employees may be binding contractual provisions against the City), *with Parviz-Khyavi v. Alcon Labs., Inc.*, 395 S.W.3d 376, 381–82 (Tex. App.—Dallas 2013, pet. denied) (employee handbook did not constitute a binding contract of employment), *and Werden*, 28 S.W.3d at 651 ("[T]he above provisions from appellee's employee handbook clearly do not express an intent to vest contractual or property rights."), *and Gamble*, 932 S.W.2d at 255 (absent some specific agreement, a personnel manual does not create property interests in the stated benefits). Rushing relies on *Paniagua v. City of Galveston* to show that policies contained within an employee manual may create a contract under Texas law. *See* 995 F.2d 1310, 1314–15 (5th Cir. 1993) (holding that a standby pay provision in the City's Personnel Rules and Regulations constituted an enforceable contractual term). In *Paniagua*,

7

however, the manual did not include a disclaimer like the one in the City's Manual. *See id.* ("[T]he absence of any disclaimer in the Rules and Regulations—i.e., to the effect that they do not create a contract or affect legal relations—reinforces the magistrate's determination that the standby provision became part of Paniagua's employment contract."). Thus, even if the policies in the City's Manual might otherwise signal contractual intent, the presence of the disclaimer here negates that intent. *See Wiland*, 216 S.W.3d at 354.

The presence of a disclaimer, however, does not always negate contractual intent. The disclaimer in *Williams*, for instance, simply stated that "[n]o provision of this ordinance shall be construed to create a vested right of compensation for sick leave benefits or, where applicable, for termination benefits." *Williams*, 353 S.W.3d at 140. We held that this limiting language only disclaimed a right to vested compensation. *Id.* We further held that even if the disclaimer negated contractual intent, its limited scope would only affect the firefighters' claims based on sick leave. *Id.* at 141.

The City of Denton's disclaimer, however, disclaims contractual intent "in any way" as to the terms of employment. Unlike the waiver in *Williams*, which was a limited waiver of vested compensation rights, the waiver here disclaims any intent to create an employment contract. *See id.* at 140. Previously, we have upheld broad general disclaimers as a valid means to negate contractual intent. *See Wiland*, 216 S.W.3d at 354. In *Wiland*, the disclaimer in Dallas County's manual stated that "[n]othing in the [manual] is to be construed as a contract of employment or a provision guaranteeing the specific term or tenure of employment." *Id.* at 349. We held that this waiver negated contractual intent on behalf of the county because of the express disclaimer. *Id.* at

8

354.  The analogous provision in the City's Manual similarly disclaims any contractual intent. Therefore, the Manual—including Policy 106.06—is not a valid written contract subject to a waiver of governmental immunity.  *See* TEX. LOC. GOV'T CODE § 271.152.

The City also argues that Policy 106.06 was not subject to section 271.152's waiver of immunity because the 2013 revisions were not "properly executed" by the City Council.  *See Williams*, 353 S.W.3d at 135.  Because the City's disclaimer negated any contractual intent, we need not consider this issue.

* * *

For governmental immunity to be waived under section 271.152 of the Local Government Code, there must first be an enforceable, written contract.  Here, the City of Denton's Policies and Procedures Manual does not create such a contract because the Manual effectively disclaims the City's contractual intent.  We accordingly reverse the court of appeals' judgment affirming the denial of the City's plea to the jurisdiction and render judgment dismissing the case.

_____
John P. Devine
Justice

Opinion Delivered: March 15, 2019

9