In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00253-CV

**CLINTON COOKE, Appellant**

**V.**

**MONTGOMERY COUNTY EMERGENCY SERVICES DISTRICT NO. 8,
Appellee**

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 21-08-11874-CV

**MEMORANDUM OPINION**

Clinton Cooke appeals the trial court's Order granting Montgomery County Emergency Services District No. 8's ("MCESD8") Plea to the Jurisdiction. In two issues, Cooke argues the trial court erred: (1) in ruling that his First Amended Petition, construed in his favor, did not support a claim for breach of contract; and (2) in denying him leave to amend his First Amended Petition to address the pleading

1

defects alleged by Appellee in its Plea to the Jurisdiction. For the reasons discussed below, we affirm the trial court's judgment.

## I. BACKGROUND

### A. Facts

In 2009, Chief Robert Hudson hired Cooke to work as a fire fighter for MCESD8.[1] In 2016, Cooke was promoted to assistant fire chief for MCESD8. Among other things, his duties included overseeing the district's finances and preparing the annual budget to present it to the District Board of Commissioners. Cooke reported to Hudson.

According to Cooke, their relationship eventually deteriorated. Cooke attributed this to Hudson being distracted by personal matters, which took him away from the office and resulted in Cooke having to assume extra duties. Cooke alleged that they even attended counseling sessions to improve their working relationship. Cooke asserted that in late 2019, he reported concerns about Hudson to MCESD8 Commissioner Rodney Otto. Cooke claims that when Hudson learned of this, he confronted Cooke and threatened to fire him.

In September 2020, Hudson told Cooke that MCESD8's attorney had contacted him about a complaint that had been made to the Public Integrity Unit of

---

[1]Cooke also sued Hudson, but Cooke filed an Agreed Motion to Dismiss All Claims against him. The trial court signed an Agreed Order of Dismissal that dismissed those claims with prejudice, and Hudson is not a party to this appeal.

2

the Montgomery County District Attorney's office, which resulted in a grand jury subpoena requesting MCESD8's financial and payroll records for the last five years. Hudson asked Cooke to gather the responsive financial records. Hudson and Cooke wondered what the complaint was about and discussed it several times. Hudson claimed that during these discussions, Cooke made several concerning comments to Hudson that gave Hudson concern about what Cooke had done without approval. As relayed by Hudson, these included the following:

> [Assistant] Chief Cooke mentioned casually, that he had "used some of his administrative training money for his college classes, since COVID19 had cancelled most conferences, however he didn't think that would be it!"
>
> I inquired why he had done that and stated that I wished he had talked to me about it first! He stated that he thought he had discussed it with me. I advised him that something unusual like that, and not within our policy, I would have requested guidance from [MCESD 8's attorney] prior to any approval.
>
> Shortly after, I believe a day or two later, he again brought up the topic and this time made a comment to the effect of, "that a couple thousand dollars of tuition would not be something worth going to jail for!" So, the issue was clearly on his mind.
> . . .
> Again, early in the week of October 5th, Chief Cooke made another unusual statement to the effect, that "he had planned to pay some bills off, but perhaps he should hold off in case he would need to be looking for a new job!"

According to Hudson, these statements by Cooke prompted Hudson to investigate further as opposed to receiving a complaint and after looking at past credit card statements, he learned that almost every month beginning in 2018, Cooke

3

had used the MCESD8 credit card to pay for his "personal college course of study" and to purchase "other non-departmental" items. Hudson determined there were at least forty instances of credit card use, and the amount paid to "two colleges, several bookstores and other vendors for non-department approved items" totaled $10,103.84. On November 2, 2020, Hudson relayed these findings to the MCESD8 Board in a written memorandum, met with the Board, and the Board voted to "support Cooke's termination."

On November 3, 2020, after Hudson's investigation and after the Board of Commissioners voted to approve Cooke's termination, MCESD8 terminated Cooke for improperly using MCESD8's credit card for his personal benefit. Cooke was apprised of the termination by letter the same day. When the MCESD8 terminated Cooke, they withheld the entire amount of his last paycheck to "recoup" the funds. Cooke claims that Hudson authorized his use of MCESD8 training funds to pay for his entire college degree program, which Hudson denies.

## B. The Pleadings

In August 2021, Cooke sued Hudson and MCESD8. In his First Amended Petition, Cooke denies any misconduct or poor performance during his tenure. He alleges that when he was terminated, MCESD8 Departmental Policy P-048 was in place and governed the handling of internal or external investigations and review of disciplinary action. He asserts that the "express rules and policy create a legitimate

4

right to continued employment, as shown with citations to sections 614.022 and 614.023 of the Texas Government Code." Cooke complains that MCESD8 Departmental Policies P-035 and P-048 were not followed, including notice and documentation requirements that would have allowed him a reasonable opportunity to respond and defend against the allegations, and he was left without an opportunity to appeal or request a disciplinary review board. He claims MCESD8 withheld his entire final paycheck of $8,127.07, with no accounting and without authorization. Cooke sought a declaratory judgment and injunction. He asserts causes of action for: (1) denial of procedural due process,[2] alleging that the Department failed to follow its rules and policy, which created a legitimate right to continued employment, and their actions denied him the right to be heard, among other things; (2) money had and received, alleging the MCESD8 holds money that in equity belongs to him; and (3) for common-law fraud, alleging that Hudson made false, material misrepresentations to him about compensation and the delivery of receipts and that he relied on Hudson's representations to his detriment, specifically that he "was injured by Defendant's false representations when Plaintiff performed ESD Eight

---

[2]Although Plaintiff's petition makes a passing reference to the United States Constitution, he has not asserted a claim arising under federal law. *See Walter v. Old Am. Cnty. Mut. Fire Ins. Co.*, No. Civ. A. H-12-2581, 2012 WL 5818227, at *2 (S.D. Tex. Nov. 14, 2012) ("A vague reference to 'the Constitution' does not establish federal-question jurisdiction."). Plaintiff confirmed in his written discovery responses that his claims were based purely on Texas state law.

services for which he was not compensated[,]" and sought damages under Texas Civil Practice and Remedies Code section 41.003. Defendants answered with a general denial and asserted various affirmative defenses, including sovereign and governmental immunity.

Under the trial court's initial Docket Control Order, the case had a trial setting of June 21, 2022, and a pleading deadline of 150 days before trial. The parties filed three agreed motions for continuance, and after amending its DCO three times, trial was ultimately set for August 21, 2023. The trial court's final DCO noted that the pleading deadline was "COMPLETED" under the third DCO, which fell on December 2, 2022.

On October 10, 2022, Cooke filed his First Amended Petition, which contained the same allegations as the Original Petition, except that he added a common-law fraud claim. In connection with that claim, Cooke alleges that Hudson had a duty to inform Cooke that he was wrong about the ability to use training funds for his fire sciences degree program. Cooke alleges that he relied to his detriment on Hudson's representations that he could use those funds for his college degree program.

## C. Plea to the Jurisdiction, Response, and Reply

In June 2023, MCESD8 filed its Plea to the Jurisdiction supported by evidence, arguing that it is protected by governmental immunity. It further contends that its

6

governmental immunity is not waived by any statutory or constitutional provision. MCESD8 argues that "[b]y policy, 'all employees of [MCESD8] are at will employees' whose employment can be terminated 'at any time, with or without cause, with or without notice.'" It also notes that its policy "does not offer tenured or guaranteed employment."

MCESD8 further contends that neither Chapter 614 of the Texas Government Code nor the Texas Uniform Declaratory Judgment Act waive sovereign immunity. MCESD8 argues that the Texas Constitution does not waive government immunity, specifically that "no private cause of action exists against a governmental entity for money damages relating to governmental entity's alleged violations of constitutional rights." MCESD8 contends a back pay claim is a claim for damages, which is not recoverable under Texas law. Finally, it asserts that governmental immunity is not waived for exemplary damages. MCESD8's Plea to the Jurisdiction included exhibits as follows: an affidavit of counsel authenticating evidence; excerpts from Cooke's deposition; excerpts from Hudson's deposition; Cooke's Answers to Hudson's Interrogatories; excerpts from Commissioner Misty Perinne's deposition; "Affidavit of Troy Koteras" outlining Hudson's duties and Cooke's duties; Departmental "Employment at Will" Policy P-024; Plaintiff's First Amended Petition; Agreed Order of Dismissal of Robert Hudson; copies of case authority and Cooke's MCESD8 Employment Application.

7

Two days before the scheduled hearing on MCESD8's Plea to the Jurisdiction, Cooke filed his Emergency Motion to Continue the Hearing on Plea to the Jurisdiction. Later the same day, MCESD8 filed its Response to Plaintiff Clinton Cooke's Emergency Motion to Continue Hearing on Plea to the Jurisdiction and objected to moving the hearing.

On June 29, 2023, Cooke filed his Response to Defendant's Plea to the Jurisdiction. In the Response, Cooke argues that the Plea to the Jurisdiction should be denied, because he pleaded that MCESD8 "failed to follow the requirements of Tex. Loc. Gov't Code §§ 614.022 and 614.023 as well as the terms of MCESD8 Policy P-048, which incorporates the language of these two statutes by reference." Cooke also contends that MCESD8's failure to follow the statutory requirements and Policy P-048 "breaches the employment agreement between Cooke and MCESD8, an agreement that is subject to the waiver of sovereign immunity found in Tex. Loc. Gov't Code § 271.152." Based on this, Cooke claims the trial court does have jurisdiction over Cooke's claims.

In his Response, Cooke also asserts that MCESD8 is authorized to contract under Texas Local Government Code sections 271.151–.152, and that code section applies to contracts under which an employee provides services to a local government unit. Cooke contends his "employment agreement with MCESD8 meets the standards for waiver of sovereign immunity" under section 271.152, so he can

sue under that contract. He also argues that MCESD8 relies "wholly on headings" in his First Amended Petition for asserting a lack of jurisdiction, rather than the gravamen of the complaint. He argues he has "alleged facts the gravamen of which is a breach of Cooke's employment agreement with MCESD8[,]" and that MCESD8 Policy P-048 creates a "legitimate right to continued employment[,]" but MCESD8 breached that policy.

Cooke argues that MCESD8 offered a unilateral contract to him for Assistant Fire Chief, which they memorialized in writing by presenting him with a Certificate signed by the President of the MCESD8 Board and Hudson. He also contends that his duties as "assistant fire chief were laid out in a written job description[,]" and he accepted MCESD8's promises "by performing the duties in the written job description." He says that this, coupled with his benefits that were "reduced to writing in his periodic pay statements" together "constitute a written agreement setting out the essential terms . . . of the unilateral employment agreement offered by MCESD8 to Cooke." He notes that the contract is for services, and his duties are analogous to "fire protection services." Cooke contends that MCESD8 Policy P-048 is part of the unilateral contract he accepted, and that the employment policy forms part of an employment agreement and modifies at will employment. He argues that MCESD8 "contractually agreed, through Policy P-048, not to act upon a complaint until the complaint was reduced to writing and provided to the employee and, further,

9

not to terminate the employee until the complaint was investigated and there was evidence to prove the allegation of misconduct." In sum, Cooke argues that his claims arise from his employment relationship with MCESD8, which he contends is governed by "Chapter 614 of the Texas Government Code," and "MCESD8 has incorporated Chapter 614 by reference in an express policy."

In his Response, Cooke also "agrees to withdraw his claim for injunctive relief against MCESD8." He argues that he has pleaded facts sufficient to establish a cause of action against MCESD8 for which sovereign immunity is waived. Alternatively, he asks that if the trial court determines his pleading is insufficient, that the court grant leave to amend his pleadings to address "identified deficiencies" and to file a Second Amended Petition. He does not attach a proposed Second Amended Petition. Cooke also included the following evidence with his Response: an attorney's affidavit authenticating exhibits; excerpts from Hudson's deposition; excerpts from Cooke's deposition; excerpts from Nathan Huffman's deposition; [3] Hudson's internal investigation memorandum to the Board dated November 2, 2020; termination letter signed by Hudson dated November 3, 2020; criminal complaint Hudson filed with constable's office; itemized list of Cooke's unauthorized charges; Assistant Chief's Job Description; excerpts from Board Member Misty Perinne's deposition; Internal Investigations Policy P-048; Declaration of Cooke; Cooke's

---

[3]The record shows that Huffman was the person responsible for training.

10

Certificate of Promotion to assistant chief; text messages between Cooke and Perinne; Cooke's Earnings Statement; and a statute regarding fire fighter compensation.

On June 30, 2023, MCESD8 filed its Reply in Support of Its Plea to the Jurisdiction. In its Reply, MCESD8 argues that Cooke failed to address the pleaded claims it moved to dismiss in the Plea to the Jurisdiction, and instead, Cooke attempts to "manufacture a wholly new breach of contract claim" that was not mentioned anywhere in his pleading. MCESD8 notes that Cooke never mentions a contract in his pleadings or the elements of a breach of contract claim. MCESD8 also contends that the court should not allow Cooke to replead on the eve of trial when the discovery and pleading deadlines have passed. It also argues that Cooke "wholly failed to plead a breach of contract claim." In addition to arguing it would be unfair to allow Cooke to amend his pleadings, MCESD8 asserts that any amendment would be futile, because Cooke's new theory does not support a waiver of immunity under Chapter 271 based on policies and procedures regarding investigations.

**D. Trial Court's Ruling and Appeal**

The trial court granted MCESD8's Plea to the Jurisdiction and signed an Order dismissing all claims against MCESD8 with prejudice, except the claim for money had and received. On July 3, 2023, Cooke filed a Notice of Partial Nonsuit, and on

11

July 5, 2023, the trial court dismissed the money had and received claim. Thereafter, Cooke timely appealed.

## II. ISSUES PRESENTED ON APPEAL

In two issues, Cooke argues the trial court erred: (1) in ruling that his First Amended Petition, construed in his favor, did not support a claim for breach of contract; and (2) in denying him leave to amend his First Amended Petition to address the pleading defects alleged by MCESD8 in its Plea to the Jurisdiction. On appeal, he does not challenge the trial court's dismissal of his claims for alleged due process violations, declaratory relief, or injunctive relief. We therefore do not discuss the dismissal of these causes of action. *See Marteny v. Coon*, No. 09-19-00019-CV, 2020 WL 5666567, at *7 n.7 (Tex. App.—Beaumont Sept. 24, 2020, no pet.) (mem. op.) (noting same in the context of a motion for summary judgment).

## III. ANALYSIS

### A. Standard of Review and Pleas to the Jurisdiction

A plaintiff bears the burden to affirmatively demonstrate the trial court's jurisdiction, which includes establishing a waiver of governmental immunity. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). The existence of subject-matter jurisdiction is a question of law that may be challenged by a plea to the jurisdiction. *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Tex. Dep't of Parks and Wildlife v. Miranda*, 133

12

S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction using a de novo standard. *See Miranda*, 133 S.W.3d at 226, 228. "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Swanson*, 590 S.W.3d at 550 (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). A trial court's review of a plea to the jurisdiction "generally mirrors the summary judgment standard." *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (citing *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016)). A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We liberally construe the pleadings in favor of the plaintiffs and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, it is an issue of pleading sufficiency, and the plaintiff should be given the opportunity to amend. *Id.*

at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227. Typically, appellate courts must remand a case to allow a party an opportunity to cure jurisdictional defects in their pleadings. *See Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 558–59 (Tex. 2016); *see Miranda*, 133 S.W.3d at 231. The right to amend usually arises when the pleadings fail to allege enough jurisdictional facts to demonstrate the trial court's jurisdiction. *Clint Indep. Sch. Dist.*, 487 S.W.3d at 559. "[R]emand is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction to plead new claims over which the trial court does have jurisdiction." *Id.* (citing *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002)).

We liberally construe pleadings in favor of the pleader, looking to the pleader's intent. *See Miranda*, 133 S.W.3d at 226; *see also City of Houston v. Williams*, 353 S.W.3d 128, 141 (Tex. 2011) (citation omitted). "Where possible courts should look to the gravamen or underlying nature of the claim and apply the law accordingly." *Pitts v. Rivas*, 709 S.W.3d 517, 525 (Tex. 2025). "The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017) (citing

14

*CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016)) (other citations omitted).

When, however, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *See Swanson*, 590 S.W.3d at 550; *Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. When a defendant files a plea to the jurisdiction challenging jurisdictional facts, it has the initial burden to meet the summary judgment standard of proof for its assertion that the courts lack jurisdiction; if it does, then the plaintiff must show "that a disputed material fact exists regarding the jurisdictional issue." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *see Miranda*, 133 S.W.3d at 227–28. If a fact issue exists, we must deny the jurisdictional plea. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 227–28. If a plaintiff fails to raise a fact question on the jurisdictional issue or the evidence supporting the defendant's assertion is undisputed, we must grant the plea to the jurisdiction as a matter of law. *See Garcia*, 372 S.W.3d at 635. "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Alamo Heights*, 544 S.W.3d at 771 (citation omitted); *see Miranda*, 133 S.W.3d at 227. "A genuine issue of material fact exists if more than a scintilla of evidence establishing

15

the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (discussing in context of a summary judgment).

## B. Applicable Law

Texas Local Government Code section 271.152 waives immunity for certain breach of contract claims. *See* Tex. Loc. Gov't Code Ann. § 271.152; *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014); *Williams*, 353 S.W.3d at 134. Section 271.152 provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152. The Supreme Court of Texas has explained that for the waiver of immunity to apply under section 271.152, three elements must be established, including: (1) that the party against whom waiver is asserted is "a local government entity" as defined by section 271.151(3); (2) the entity must be authorized by statute or Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2). *See Williams*, 353 S.W.3d at 134–35 (quoting Tex. Loc. Gov't Code Ann. §§ 271.151–.152). A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the

16

local governmental entity." Tex. Loc. Gov't Code Ann. § 271.151(2); *Williams*, 353 S.W.3d at 135 (citation omitted). Said another way, for a contract to meet the third element and be subject to section 271.152's waiver of immunity, it must: (1) be in writing; (2) state the agreement's essential terms; (3) provide for goods or services; (4) to the local governmental entity; and (5) be executed on behalf of the local governmental entity. *Williams*, 353 S.W.3d at 135 (citing Tex. Loc. Gov't Code Ann. § 271.151(2)). In *City of Houston v. Williams*, the Texas Supreme Court determined that a city ordinance may be considered a unilateral contract in certain circumstances and that the waiver of immunity in section 271.151 may apply. *See id.* at 137–39.

Later, in *City of Denton v. Rushing*, the Court again addressed whether a contract existed that waived the city's immunity from suit under section 271.152. *See* 570 S.W.3d 708, 709 (Tex. 2019). The plaintiff argued that a policy in the city's policy manual constituted the terms of a unilateral contract that he had accepted and that he was therefore due compensation. *See id.* at 710. There, the city's policy manual contained a disclaimer stating that its contents

> do not in any way constitute the terms of a contract of employment and should not be construed as a guarantee of continued employment with the City []. Employment with the City [] is on an at will basis. This means that the employment relationship may be terminated at any time by either the City or the employee for any reason not expressly prohibited by law.

*Id.* at 709. Ultimately, the Court concluded that the city's "Policies and Procedures Manual does not create such a contract because the Manual effectively disclaims the

City's contractual intent." *See id.* at 713. The Court noted however, that a disclaimer does not always negate contractual intent and distinguished the disclaimer in *Williams*, which only disclaimed a right to vested compensation. *See id.* at 712.

Here, Cooke also alleges that 614.022 and 614.023 of the Texas Government Code, which control how complaints against fire fighters are handled, applies to his claims and forms the basis of his contractual claim. *See* Tex. Gov't Code Ann. §§ 614.022–.023. As applicable here, section 614.022 provides that a complaint against a fire fighter "must be: (1) in writing; and (2) signed by the person making the complaint." *Id.* § 614.022. Section 614.023 provides:

> (a) A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace officer appointed or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.
> (b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.
> (c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:
>     (1) the complaint is investigated; and
>     (2) there is evidence to prove the allegation of misconduct.

*Id.* § 614.023. It is well settled that chapter 614 "does not alter the at-will relationship, but prescribes procedures that apply when the employer elects to terminate employment based on a complaint of misconduct rather than terminating at will." *Colorado Cnty. v. Staff*, 510 S.W.3d 435, 439 (Tex. 2017). Additionally, a

18

"signed disciplinary notice provided to the employee contemporaneously with the suspension of employment" is sufficient to meet Chapter 614's notice requirements. *See id.*; *Paske v. Fitzgerald*, 499 S.W.3d 465, 468 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## C. Issue One

In his first issue, Cooke complains that the trial court erroneously determined he had not pleaded a breach of contract claim and the allegation that MCESD8 breached its employment policies is "an allegation that sounds in contract." In support of this issue, Cooke contends that (1) policies limiting the employer's right to terminate are enforceable promises, and (2) MCESD8's Policy P-048 modified its right to terminate him. Cooke argues that MCESD8 based its Plea on the sufficiency of his pleadings and failed to address his claims arising under its employment policies.

Cooke's First Amended Petition claims MCESD8 Policy P-048 was in place for the handling of investigations and review of disciplinary action. He further asserts the rules and "policy create a legitimate right to continued employment, as shown with citations to section 614.022 and 614.023 of the Texas Government Code." He also alleges that MCESD8 failed to follow this policy and prevented him an opportunity to defend against the allegation. We reject Cooke's arguments for several reasons as outlined below.

19

First, we disagree with Cooke's contention that MCESD8's Plea to the Jurisdiction did not attack his claims arising under employment policies P-048 and P-035. The Plea to the Jurisdiction directly challenged Cooke's arguments and his alleged "claims that he was terminated in violation of the District's internal policies[.]" The Plea to the Jurisdiction attacked the pleadings and the jurisdictional facts with evidence. *See Alamo Heights*, 544 S.W.3d at 770. At issue is whether Cooke pleaded and provided a legal or factual basis for a breach of contract cause of action that would fall within the statutory waiver of immunity. Central to this inquiry is whether the parties modified the at-will employment relationship in favor of an agreement containing a continued right to employment.

The record shows that MCESD8 asserts in its Plea that by policy, all its employees "'are at will employees' whose employment can be terminated 'at any time, with or without cause, with or without notice.'" In support of this contention, MCESD8 attached its "Employment at Will" Policy P-024. That Policy provides,

> **I. Purpose**
> The purpose of this policy is to communicate that all employees of this Department are at will employees.
> **II. Scope**
> This guideline is applicable to all employees of the South Montgomery County Fire Department.
> **Ill. Procedure**
>> A. Employment at Will
>> The Department *does not offer tenured or guaranteed employment*. Either the Department or employee can terminate the employment relationship at any time, with or without cause,

20

with or without notice. This type of employer/employee relationship is called Employment at Will.

B. Progressive Discipline and Employment at Will

While the Department may elect to follow its progressive discipline procedure, the Department is in no way obligated to do so. Using progressive discipline is at the sole discretion of the Department in an employment at will workplace.

(Emphasis added.) MCESD8 also provided a signed copy of Cooke's Employment Application. The Application signed by Cooke contains and acknowledgment that MCESD8 "is an at-will" employer. MCESD8's statement that it "does not offer tenured or guaranteed employment" coupled with its express designation of an at-will employment relationship is like the at-will policy in *City of Denton v. Rushing*. *See* 570 S.W.3d at 713. MCESD8's "Employment at Will" Policy P-024 directly undermines the existence of a contract creating a right to continued employment because "it effectively disclaims" MCESD8's "contractual intent." *See id.*

In its Plea to the Jurisdiction, MCESD8 challenged the alleged jurisdictional fact of a continued right to employment under its policies; MCESD8 met its burden of proof by providing its "Employment at Will" Policy and Cooke's signed Employment Application acknowledging his at-will status. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 227–28. Therefore, the burden shifted to Cooke to show "that a disputed material fact exists regarding the jurisdictional issue." *Garcia*, 372 S.W.3d at 635; *see Miranda*, 133 S.W.3d at 227–28. He argues on appeal that Policy P-048 modified MCESD8's right to terminate him. In his Response to the

21

Plea to the Jurisdiction, Cooke points to other MCESD8 policies, particularly P-035 and P-048.[4] He also included a copy of Policy P-048 with his Response. Policy P-048 states that MCESD8 will investigate and handle complaints against employees "in accordance with Texas Government Code Section 614.022–.023." As noted above, those provisions require that complaints against a fire fighter be in writing and signed by the person making a complaint and among other things, that a fire fighter cannot be terminated based on a complaint unless it is investigated and there is some evidence to prove an allegation of misconduct. *See* Tex. Gov't Code Ann. §§ 614.022, 614.023(c). But, as a matter of law, Sections 614.022–.023 do not alter the employment-at-will status of the employees. *See Staff*, 510 S.W.3d at 439.

In the trial court, the parties provided contradictory evidence of whether Hudson's investigation into Cooke resulted from his personal knowledge based on Cooke's statements to him or from a complaint that would require adherence to the procedures in Chapter 614 and to Policy P-048. Even after viewing this evidence in the light most favorable to Cooke, and assuming without deciding that Hudson should have followed the Chapter 614 procedures, it does not show a genuine issue of material fact existed on the employment relationship nor does it establish a contract for continued employment. *See Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 227; *Staff*, 510 S.W.3d at 439. Undisputed evidence also

---

[4]The record does not contain a copy of Policy P-035.

shows that Hudson provided Cooke with a signed letter at the time of his termination, which was sufficient to meet Chapter 614's notice requirements. *See id.*; *Paske*, 499 S.W.3d at 468.

Cooke has failed to show that a disputed issue of material fact exists regarding the jurisdictional issue, and we conclude the trial court did not err in granting the plea. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 227–28. We overrule issue one.

## D. Issue Two

In Cooke's second issue, he contends the trial court erred by failing to permit him to amend his pleadings. In support of this issue, he argues that his First Amended Petition did not affirmatively negate jurisdiction on the breach-of-contract claims and that pleading amendments would not be futile.

Although we generally allow litigants the opportunity to amend to cure pleading defects where they do not allege enough jurisdictional facts, this is not a pleading defect, and the opportunity to amend would be futile. *See Clint Indep. Sch. Dist.*, 487 S.W.3d at 558–59; *Miranda*, 133 S.W.3d at 231. The "jurisdictional bar arises not from a lack of factual allegations but from the nature of [the plaintiffs'] claims." *See Clint Indep. Sch. Dist.*, 487 S.W.3d at 543. As discussed in issue one above, the pleaded facts and evidence show that MCESD8's Policy P-048 incorporating sections 614.022 and 614.023 did not create a contract for continued

23

employment. *See Ramirez*, 74 S.W.3d at 867. Even assuming Cooke had pleaded a breach of contract cause of action in his first amended petition, MCESD8's jurisdictional evidence established the MCESD8 had expressly disclaimed any intent to create a continued right to employment that altered the at-will employment relationship. *See Rushing*, 570 S.W.3d at 713. Thus, the pleaded facts and evidence demonstrate it is impossible for Cooke to amend his pleadings to invoke jurisdiction. *See Ramirez*, 74 S.W.3d at 867; *see also Clint Indep. Sch. Dist.*, 487 S.W.3d at 543. We overrule issue two.

## CONCLUSION

Having overruled Cooke's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on May 16, 2025
Opinion Delivered August 14, 2025

Before Golemon, C.J., Johnson and Wright, JJ.